THE COUNTY OF KANE, Appellant, v. THE ILLINOIS STATE LABOR RELATIONS BOARD *et al.*, Appellees.

Second District   No. 2—87—0122

Opinion filed January 29, 1988.

Robert J. Morrow and Robert F. Casey, State's Attorneys, of Geneva (William F. Barrett, Assistant State's Attorney, and David R. Akemann, of counsel), for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart and Shawn W. Denney, Solicitors General, Rosalyn B. Kaplan, Assistant Attorney General, and Jacalyn Zimmerman, of Illinois State Labor Relations Board, of Chicago, of counsel), for respondent Illinois State Labor Relations Board.

Cornfield & Feldman, of Chicago (Melissa J. Auerbach, of counsel), for respondent American Federation of State, County and Municipal Employees.

JUSTICE REINHARD delivered the opinion of the court:

The County of Kane (County) appeals from the decision and order of the Illinois State Labor Relations Board (State Board) that was issued in an unfair labor practice proceeding pursuant to section 11(e) of the Illinois Public Labor Relations Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 1611(e)). The County was found to have violated sections 10(a)(1) and 10(a)(4) of the Act for refusing to bargain with the exclusive collective bargaining representative, the American Federation of State, County and Municipal Employees (AFSCME), of an appropriate unit of employees of the sheriff of Kane County (Sheriff).

This appeal raises two issues involving the decision of the State Board to deny the County's request to inquire into the procedures and criteria utilized by the State Board to determine the 30% "showing of interest" requirement for representation in section 9(a) of the Act and the decision of the State Board that the County and the Sheriff are joint employers of the petitioning employees.

On February 13, 1985, AFSCME filed a petition seeking to represent all nonpeace officer personnel employed by the Kane County sheriff's department, excluding all supervisors, managerial, and confidential employees as defined by the Act. The petition named the County and the Sheriff as joint employers of the petitioned-for employees. The County and the Sheriff filed a motion to dismiss denying, *inter alia*, that they were joint employers and that 30% of the employees in an appropriate unit requested a secret election to determine that AFSCME was the exclusive bargaining agent. Hearing officer Judith Mostovoy denied the motion and, following a hearing primarily related to the joint-employer question, issued a recommended opinion and direction of election. In her recommended opinion and direction of election, Mostovoy found that section 1210.80 of the State Board's Rules and Regulations (80 Ill. Adm. Code 1210.80(g) (1985)) provides that the adequacy of AFSCME's showing of interest is inappropriate for litigation by the employer before the State Board

and concluded that the Sheriff and the County are joint employers of the petitioned-for employees.

The Sheriff and the County filed their exceptions to the recommended opinion. After reviewing the record, the State Board adopted the hearing officer's recommendation as the decision of the State Board. The County filed an interlocutory appeal in this court seeking review of the representation issues. This appeal was dismissed, there being no final order appealed from. *County of Kane v. Illinois State Labor Relations Board* (1987), 153 Ill. App. 3d 1161 (unpublished Rule 23 order).

While the appeal was pending, on April 10, 1986, a representation election was held, and, on April 16, 1986, AFSCME was certified by the State Board as the exclusive representative of all the petitioned-for employees of the Kane County sheriff's department. In response to AFSCME's demand to begin negotiations for a collective bargaining agreement, the County indicated that it wanted to postpone collective bargaining until this court ruled in the pending appeal. While the Sheriff expressed his willingness to bargain, the County persisted in its refusal to meet and negotiate with AFSCME.

On July 17, 1986, AFSCME filed an unfair labor practice charge, and a hearing was held before hearing officer William A. Waechter, during which the County admitted that it had failed to bargain and continued in its refusal to do so for the purpose of preserving its right to appeal and to seek judicial review of the issues of that hearing. Hearing Officer Waechter issued a recommended opinion and order wherein he found that the County had failed to bargain, but that the Sheriff had bargained pursuant to his responsibilities under the Act. The State Board adopted the hearing officer's recommendation as its decision and ordered the County, *inter alia*, to bargain collectively with AFSCME. It is from this decision that the County appeals.

We examine, initially, the County's contention that the denial, at the representation hearing, of its oral motion to inquire into the procedures and criteria utilized in the State Board's determination of the adequacy of the " 'jurisdictionally required' " 30% showing of interest relative to the proposed unit employees violated its administrative due process rights. The record shows that the County requested that a State Board employee appear so that the County could inquire into what criteria were used in evaluating whether there was an adequate showing of interest. The County also represented that it had the right to inquire into the validity of the signatures of those signing authorization cards which were used in determining the showing of interest.

Both AFSCME and the State Board note that section 1210.80 of

the State Board's Rules and Regulations, governing the showing of interest, provides that the State Board maintain the confidentiality of the showing of interest and determine the adequacy of that showing administratively and that the showing not be subject to collateral attack. (80 Ill. Adm. Code 1210.80 (1985).) Because the Act's showing of interest requirement is patterned after that of the National Labor Relations Act (NLRA), they argue that, just as the Federal courts and the National Labor Relations Board (NLRB) have found the NLRB's showing of interest determinations nonreviewable, this court should find the State Board's determination nonreviewable as well. The State Board also urges that additional inquiry into its procedures would pose serious threats to the confidentiality of the showing of interest.

Furthermore, the State Board joins AFSCME's contention that the 30% showing of interest is not a jurisdictional requirement, but only provides the State Board with a statutory basis for declining petitions, where it would be unlikely for a union-petitioner to prevail at a representation election, in order for the State Board to avoid frivolous cases. The State Board argues further that, because the County has not identified a protectable property right in the State Board's preliminary determination of whether to investigate a petition for representation and because, upon its determination to investigate notice was issued and a representation hearing held, the County was not deprived of any due process right.

Section 9(a) of the Act provides, in pertinent part, as follows:

"Sec. 9. Elections; recognition. (a) Whenever in accordance with such regulations as may be prescribed by the Board a petition has been filed:

(1) by a public employee or group of public employees or any labor organization acting in their behalf demonstrating that 30% of the public employees in an appropriate unit (A) wish to be represented for the purposes of collective bargaining by a labor organization as exclusive representative, ***

(2) *** the Board shall investigate such petition, and if it has reasonable cause to believe that a question of representation exists, shall provide for an appropriate hearing upon due notice." (Ill. Rev. Stat. 1985, ch. 48, par. 1609.)

Section 1210.80(g) of the State Board's Rules and Regulations provides:

"(g) The adequacy of the showing of interest shall be determined administratively by the Board or its agent. The showing of interest shall not be subject to collateral attack. However, any person who has evidence that the showing of interest was

obtained improperly may bring the evidence to the attention of the Board's agent investigating the petition." 80 Ill. Adm. Code 1210.80(g) (1985).

The County's reference to the 30% showing of interest as a jurisdictional requirement is unsupported by citation to any authority and is, otherwise, without merit. The Act provides that, upon the filing of a petition supported by a 30% showing of interest, the State Board "shall investigate such petition, and if it has reasonable cause to believe that a question of representation exists, shall provide for an appropriate hearing upon due notice." (Ill. Rev. Stat. 1985, ch. 48, par. 1609(a)(2).) This language is substantially similar to that of section 9(c)(1)(A) of the NLRA (29 U.S.C. §159(c)(1)(A) (1982)), which has been construed not to be a jurisdictional prerequisite to NLRB action, but, rather,

"an 'administrative expedient[] only, adopted to enable the [NLRB] to determine for itself whether or not further proceedings are warranted, and to avoid needless dissipation of the Government's time, effort and funds' through investigation of frivolous petitions. In re O. P. Jennings & Co., 68 NLRB 516, 517-18 (1946), quoted in NLRB v. J. I. Case Co., 201 F.2d 597, 599 n.3 (9th Cir. 1953)." (NLRB v. Metro-Truck Body, Inc. (9th Cir. 1979), 613 F.2d 746, 749.)

Further, it has been held that the showing of interest requirement is "merely a step in the screening process to facilitate the Board's determination under Section 9(c) that a sufficient question of representation is presented to warrant the expense and effort of an election." NLRB v. Louisville Chair Co. (6th Cir. 1967), 385 F.2d 922, 926.

■ It is the representation election which decides the "substantive issue whether the Union represents a majority of the employees." (NLRB v. Louisville Chair Co. (6th Cir. 1967), 385 F.2d 922, 926-27.) It follows, then, that no statutory purpose would be served in allowing the parties to litigate the issue of the adequacy of a union's showing of substantial interest. (See NLRB v. Carilli (9th Cir. 1981), 648 F.2d 1206, 1214; NLRB v. Metro-Truck Body, Inc. (9th Cir. 1979), 613 F.2d 746, 750; NLRB v. P.A.F. Equipment Co. (10th Cir. 1976), 528 F.2d 286, 287.) The United States Supreme Court has recognized that while a union petition must be backed by a 30% showing of employee interest, the sufficiency of that showing is not litigable by the parties. Linden Lumber Division, Summer & Co. v. NLRB (1974), 419 U.S. 301, 309, 42 L. Ed. 2d 465, 471, 95 S. Ct. 429, 434.

■■ It is significant that the Federal court's interpretations of a Federal statute are not binding upon the Illinois courts or legislature;

nevertheless, when the State legislature passes a State statute based upon a Federal statute, the statute can presumably be interpreted in conformity with the decisions of the Federal courts rendered prior to the adoption of the statute. (*Laborer's International Union of North America, Local 1280 v. Illinois State Labor Relations Board* (1987), 154 Ill. App. 3d 1045, 1050, 507 N.E.2d 1200.) It may also be presumed that the legislature adopted the language it did with knowledge of the construction previously enunciated in the Federal courts. (154 Ill. App. 3d at 1050, 507 N.E.2d at 1204, citing *Commonwealth Life & Accident Insurance Co. v. Board of Review of the Department of Labor* (1953), 414 Ill. 475, 481-82, 111 N.E.2d 345, 348.) As the State Board indicates, the Senate debates leading to the adoption of the Act indicate that the Act

> "attempt[s] to follow as closely as possible language found in the NLRB, or National Labor Relation Act, and labor law provisions interpreting that Act[.]
>
> * * *
>
> *** [T]he labor board under this legislation [would] consider the same factors as those considered by the NLRB in its determination[s]." (83d Ill. Gen. Assem., Senate Proceedings, May 27, 1983, at 300-01 (statements of Senator Keats).)

(See 83d Ill. Gen. Assem., Senate Proceedings, May 27, 1983, at 300-01 (statement of Senator Collins).) The Illinois Public Labor Relations Act was passed based on the National Labor Relations Act and, thus, where similar in language, can be interpreted in conformity with Federal decisions.

■ Thus, the initial showing of interest requirement exists to help the State Board focus only upon meaningful representation petitions. Like the NLRB, if the ensuing investigation reveals a reasonable cause to believe that a question as to the representation exists, the State Board is required to provide for an appropriate hearing upon due notice. The majority representative, if not recognized by the employer, is determined following a secret ballot election conducted by the State Board and the State Board's certification of the results thereof. (Ill. Rev. Stat. 1985, ch. 48, par. 1609(d).) The question of union support is conclusively decided by the representation hearing, if reasonable cause exists as to questionable representation, and the actual secret ballot election. Accordingly, there is no need to litigate the showing of interest's existence at the initial petition stage. We find that the hearing officer properly denied the County's request for inquiry into the adequacy of AFSCME's showing of interest without denying the County any administrative due process rights.

■ The County next contends that the finding of the hearing officer, adopted by the State Board, that the County was the joint employer with the Sheriff of the petitioned-for employees was against the manifest weight of the evidence. The County argues that the County's only duty relative to the Sheriff's department and its employees is to provide the funds and facilities to operate the department, whereas the personnel are hired by the Sheriff and the Kane County Sheriff's Merit Commission, that the Sheriff has withdrawn from the County's job classification and salary compensation system, and that the decision in *County of Kane v. Carlson* (1987), 116 Ill. 2d 186, 507 N.E.2d 482, is analogous authority that the County is not a joint employer, as the supreme court therein found that Kane County was not an employer of the Kane County deputy circuit clerks.

Addressing, first, the County's reliance on the decision in *County of Kane*, we find that Kane County, in that case, conceded that it was not the employer of the Kane County deputy circuit clerks (*County of Kane*, 116 Ill. 2d at 200, 507 N.E.2d at 486-87), and it is apparent that the issue of joint-employer status was not presented, analyzed, or determined in that opinion. Therefore, the decision in *County of Kane* does not support the County's position on this issue. See *City of Rockford v. Illinois State Labor Relations Board* (1987), 158 Ill. App. 3d 166, 173-74, 512 N.E.2d 100.

This court has recently addressed a joint-employer issue in *City of Rockford v. Illinois State Labor Relations Board* (1987), 158 Ill. App. 3d 166, 512 N.E.2d 100, wherein the petitioners, the city and the public library, argued that the factors linking them were insufficient to find joint-employer status. In that case, this court found that the "key consideration in determining employer status is the extent to which an entity is necessary to create an effective bargaining relationship." *City of Rockford*, 158 Ill. App. 3d at 173, 512 N.E.2d at 104, citing *County of Kane* 2 PERI par. 2012 (ISLRB 1986), and *Du Page County Board* 1 PERI par. 2003 (ISLRB 1985).

The court also found that while the library possessed the authority to hire and discharge employees, to fix their compensation and fringe benefits, and to adopt its own bylaws and rules and regulations, the city shared authority with the library to tax and raise funds for library purposes. Based on the city's role in the library's funding and the factual similarities of *City of East St. Louis*, 2 Pub. Employee Rep. (Ill.) par. 2006, Case No. S—RL—1976 (Illinois State Labor Relations Board December 18, 1985) (wherein the city financed the public library and was found to be a joint employer), the court agreed with the petitioners that meaningful negotiations regarding

the employment terms and conditions of the library employees could not take place without the presence of both the city and the library. *City of Rockford*, 158 Ill. App. 3d at 172, 512 N.E.2d at 104.

The record, here, shows that both the County and the Sheriff do retain control over certain subjects falling within the scope of the mandatory subjects of bargaining. As AFSCME and the State Board point out, the Sheriff and the County Board of Kane County (County Board) recognize that they, each, retain control over certain conditions of employment in the Sheriff's department as reflected in ordinance number 84–56, entitled "An Ordinance Amending the Kane County Code Regarding Labor Management Relations," which created a County Board labor-management committee. This ordinance, recognized by the Sheriff in a memorandum of understanding, authorized the committee to negotiate a collective bargaining agreement on behalf of the Sheriff and the County Board. Pursuant to the memorandum, the Sheriff, as an elected official having internal control over his office, controls most of the nonfinancial terms of employment, including conduct, discipline, hiring, promotions, scheduling, and nonfund-related complaints, and must approve any agreement negotiated by the committee on those subjects. The County Board was given sole authority to negotiate any collective bargaining agreement for the financial terms of employment including wages, sick days, vacations, insurance, overtime, budgetary items, disability benefits, and pension and retirement benefits.

The Sheriff, by statute, controls the internal operations of his office "[s]ubject to the applicable county appropriation ordinance." (Ill. Rev. Stat. 1985, ch. 125, par. 14a.) Under section 14a,

> "the sheriff shall direct the county treasurer to pay, and the treasurer shall pay, the expenditures for the sheriff's office, including payments for personal services, equipment, materials and contractual services. Purchases of equipment by the sheriff shall be made in accordance with any ordinance requirements for centralized purchasing through another county office or through the state which are applicable to all county offices." (Ill. Rev. Stat. 1985, ch. 125, par. 14a.)

While the County Board's budgetary authority under this provision is limited to the appropriation of an aggregate or lump sum amount for the necessary equipment, materials and services required by the Sheriff's office (see 1984 Ill. Att'y Gen. Op. 9), the Sheriff is required to stay within the appropriated amount for each classification.

Furthermore, the evidence shows that the Sheriff submits his budget, which authorizes the amount he can spend in a given year, to

the County Board Public Safety Committee and, then, to the full County Board for approval. Revisions can be made at any point during this process. The compensation plans for the Sheriff's employees are established by County ordinance, and the Sheriff's employees are covered under the County-wide insurance program for health, unemployment compensation, workers' compensation, and retirement benefits. This coverage is not charged, as a budgetary item, to the Sheriff's department. The Sheriff is, also, limited to appointing the number of deputies allowed by the County Board (Ill. Rev. Stat. 1985, ch. 125, par. 7), and his employees are paid bimonthly as determined by the county auditor on checks issued by the county auditor.

Prior to February 22, 1985, the Sheriff issued to all civilian employees in his office identification cards identifying each as "an employee of the County of Kane." Each new employee is given a copy of the County Personnel Handbook and is covered by the County's job classification system. Thus, while the Sheriff does have control over the internal operations of his office, it is clear that he does not have complete control over the wages, hours and working conditions of his employees.

For the foregoing reasons, we find that the County is a necessary party to the creation of an effective bargaining relationship and is a joint-employer with the Sheriff.

We note, too, that the legislature has amended section 3(o) of the Act by Public Act 84—1104, effective January 1, 1986, which now provides, in part:

> "County boards and county sheriffs shall be designated as joint or co-employers of county peace officers appointed under the authority of a county sheriff. Nothing herein shall be construed to prevent the State Board or the Local Board from determining that employers are joint or co-employers." (Ill. Rev. Stat. 1985, ch. 48, par. 1603(o).)

The legislature, thus, has designated a joint-employer status with regard to peace officers appointed under the authority of the Sheriff. Under the facts in this record, the County has been shown to be the joint-employer of the nonsworn employees of the Sheriff's office as well.

For the foregoing reasons, the order and decision of the State Board is affirmed.

Affirmed.

INGLIS and NASH, JJ., concur.