MICHAEL GRCHAN, Rock Island County Sheriff, *et al.*, Petitioners, v. ILLINOIS STATE LABOR RELATIONS BOARD *et al.*, Respondents.— MICHAEL GRCHAN, Rock Island County Sheriff, *et al.*, Plaintiffs-Appellants, v. ILLINOIS STATE LABOR RELATIONS BOARD *et al.*, Defendants-Appellees.

Third District   Nos. 3—98—0373, 3—99—0020, 3—99—0077 cons.

Opinion filed July 10, 2000.—Rehearing denied August 22, 2000.

BRESLIN, J., concurring in part and dissenting in part.

Brian A. Schroeder, of Thomas F. McGuire & Associates, Ltd., of Long Grove, for Michael Grchan.

Arthur W. Eggers and James S. Zmuda, both of Califf & Harper, of Moline, for Rock Island County.

John R. Roche and Gary L. Bailey, both of Illinois Fraternal Order of Police Labor Council, of Western Springs, for Illinois Fraternal Order of Police Labor Council.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Jerald S. Post, Assistant Attorney General, of counsel), for Illinois State Labor Relations Board.

JUSTICE KOEHLER delivered the opinion of the court:

The Illinois State Labor Relations Board (ISLRB) found that Rock Island County Sheriff Michael Grchan (sheriff) and Rock Island County (county) had committed an unfair labor practice by disciplining sheriff's sergeant Michael Huff in retaliation for his protected union activities. After the ISLRB issued its unfair labor practices complaint, the sheriff and the county filed a petition with the circuit court to enjoin the ISLRB from conducting the hearing. The circuit court refused to grant a preliminary injunction and, on interlocutory review, this court affirmed the circuit court. However, after the ISLRB issued its decision, the circuit court ruled that its order was void *ab initio* because the ISLRB lacked the power to alter discipline that the Rock Island County Sheriff's Merit Commission (Merit Commission) had previously imposed.

In this consolidated appeal, the sheriff and the County appeal from the ISLRB order, contending that: (1) the doctrine of *res judicata* barred the ISLRB from considering Huff's claims arising out of the discipline imposed by the Merit Commission; (2) the evidence was insufficient to sustain the ISLRB decision; and (3) the ISLRB abused its discretion by imposing sanctions against the sheriff. In addition, the county contends that it cannot be held liable for an unfair labor practice committed by the sheriff. For their part, Huff, the Fraternal Order of Police (FOP) (Huff's labor union), and the ISLRB contend, *inter alia*, that the circuit court erred by barring enforcement of a

valid ISLRB order. For the following reasons, we affirm the ISLRB decision and vacate the circuit court's order.

## FACTS

In April 1994, the sheriff reassigned Huff to the courthouse security division. Huff, through the FOP, filed a grievance concerning his reassignment. In July 1995, while Huff's grievance was pending in arbitration, representatives of the FOP met with the sheriff and his undersheriff. During this meeting, the sheriff speculated that he might "fire [Huff] and solve the problem." At the same meeting, the undersheriff made the following statement: "if Mike Huff thinks filing all of these grievances is going to get him back on [patrol duty], he's crazy."

In April 1995, the sheriff reassigned Huff to patrol duty after Huff prevailed in the arbitration proceeding. Less than three weeks later, the sheriff disciplined Huff in connection with Huff's investigation of a single-car automobile accident in which the driver was missing from the scene. The body of the presumed driver was found weeks later some distance from the accident scene. On April 19, the sheriff's office reprimanded Huff for failing to ensure that the next shift received a copy of the accident report and for failing to collect and preserve certain evidence.

On September 5, 1995, the sheriff suspended Huff for one day for exercising poor judgment in calling out an investigator to the scene of a residential burglary in July 1995. On September 13, 1995, the sheriff suspended Huff for two days for failing to properly supervise the preservation of evidence related to a reported sexual assault in June 1995 and lying to a sheriff's department internal affairs investigator. Huff grieved these suspensions to the FOP, which later decided to advance the grievances to arbitration.

Also on September 13, the sheriff's office notified Huff that it was investigating his response to an August 20, 1995, domestic violence call. On September 29, 1995, the FOP filed an unfair labor practice charge with the ISLRB alleging that the sheriff had reprimanded Huff in April and had suspended him twice in September in retaliation for his protected union activities.

On October 18, 1995, the sheriff notified Huff that he had filed a Merit Commission complaint against Huff for failing to make a written report of the August domestic violence incident. After a hearing, the Merit Commission found Huff guilty of misconduct. The Merit Commission then considered evidence in aggravation and mitigation, including evidence related to the previous disciplinary action taken against Huff. The Merit Commission discharged Huff from his employment.

Huff filed a complaint for administrative review of the Merit Commission decision. On review, the circuit court found that the Merit Commission's decision to terminate Huff was unreasonable and remanded the case for consideration of a lesser sanction. While awaiting the Merit Commission's decision on remand, the FOP filed a second unfair labor practice charge with the ISLRB alleging that the sheriff had commenced the Merit Commission proceedings in retaliation for the FOP's first unfair labor practice charge. After investigation, the ISLRB consolidated the two charges and issued a complaint. The sheriff filed a petition seeking a writ of prohibition and a motion for preliminary injunction to prevent the ISLRB from initiating a hearing. The circuit court denied the motion for preliminary injunction and, on interlocutory appeal, this court affirmed. *Grchan v. Illinois State Labor Relations Board*, 291 Ill. App. 3d 571, 573-74, 683 N.E.2d 1290, 1292 (1997).

On remand from the circuit court, the Merit Commission demoted Huff from sergeant to deputy, suspended him for 180 days commencing with the Merit Commission's finding of misconduct, and suspended Huff without pay for a period prior to its finding of misconduct. The circuit court denied Huff's complaint for administrative review. On appeal, this court affirmed the circuit court's decision to uphold the Merit Commission's finding of misconduct but remanded to the Merit Commission for a reduced penalty. We also affirmed the circuit court's ruling that the Merit Commission's decision to terminate Huff was unreasonable and arbitrary, and reversed that part of the reduced penalty imposed on remand which suspended Huff without pay for a period prior to the Merit Commission's finding of misconduct. *Huff v. Rock Island County Sheriff's Merit Comm'n*, 294 Ill. App. 3d 477, 486, 689 N.E.2d 1159, 1167 (1998).

The unfair labor practice charges then proceeded to a hearing before an ISLRB administrative law judge (ALJ). After the hearing, the ALJ concluded that the sheriff and the county committed an unfair labor practice by disciplining Huff in retaliation for his protected union activity. In particular, the ALJ found that Huff's union activity had been a substantial or motivating factor in the sheriff's decision to take disciplinary action. The ISLRB agreed, finding that the following evidence demonstrated the sheriff's retaliatory motive: (1) the hostile statements made by the sheriff and his undersheriff during the July 1994 meeting with the FOP which directly referred to Huff's reassignment to patrol duty and the disciplinary action; (2) the short interval of time between Huff's reassignment to patrol duty and the sheriff's disciplinary action; and (3) the sheriff's demonstrably false assertion that he had applied progressive discipline in Huff's case. To remedy

the unfair labor practice, the ISLRB ordered, *inter alia*, the sheriff and the county to reinstate Huff to the rank of sergeant without prejudice to his seniority and with back pay plus interest.

Following the ISLRB hearing, the sheriff filed a motion for sanctions against the FOP charging that the FOP did not timely file its grievances. In response, the FOP filed its own motion for sanctions against the sheriff claiming that the parties agreed during the ISLRB hearing not to seek sanctions and that the allegations of the sheriff's motion were patently false. The ISLRB granted the FOP's motion and ordered the sheriff to pay the FOP's costs in litigating the issue of whether the FOP timely filed the grievances.

After the ISLRB issued its decision and the sheriff filed his appeal, the circuit court issued its final ruling on the sheriff and county's request for a writ of prohibition, injunction and declaratory judgment. On cross-motions for summary judgment, the circuit court found that the ISLRB order purported to nullify the Merit Commission findings that Huff engaged in misconduct and deserved to be punished. The circuit court ordered that, to the extent the ISLRB order altered the discipline imposed by the Merit Commission, it was void *ab initio*. The circuit court also ruled that the sheriff and the county had met all the elements necessary to obtain a writ of prohibition and injunctive and declaratory relief.

The ISLRB appeals the circuit court's grant of a writ of prohibition, injunction and declaratory judgment. The sheriff and county appeal the circuit court's order insofar as it declares void *ab initio* only that part of the ISLRB's order that reviews and modifies the Merit Commission's order.

Additional facts relevant to this appeal will be introduced as they become necessary to our analysis.

## ANALYSIS

### Preclusive Effect of Merit Commission Proceedings

■ On appeal, the sheriff and the county argue that Huff's unfair labor practice claims were barred under the doctrine of *res judicata*. In particular, they argue that Huff could have raised those claims as a defense in the Merit Commission proceedings. Huff, the FOP, and the ISLRB contend that the circuit court erred when it concluded that the Merit Commission proceedings precluded the ISLRB from considering whether Huff had engaged in misconduct and whether he deserved the punishment imposed and, therefore, granted the sheriff and the county summary judgment. The issue of whether a subsequent claim is barred by the doctrine of *res judicata* is a matter of law. *Village of Maywood Board of Fire & Police Commissioners v. Department of Hu-*

*man Rights*, 296 Ill. App. 3d 570, 578, 695 N.E.2d 873, 879 (1998). We review questions of law *de novo. In re Marriage of Skinner*, 149 Ill. App. 3d 788, 791, 501 N.E.2d 311, 313 (1986). Further, summary judgment should be granted when the pleadings, depositions, exhibits and affidavits on file reveal no genuine issue of material fact and the movant is entitled to judgment as a matter of law. 735 ILCS 5/2—1005 (West 1998). Our review of an order granting summary judgment is *de novo. Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 483, 693 N.E.2d 358, 370 (1998). These claims ask this court the same question of law: what, if any, preclusive effect should the Merit Commission decision have had on the subsequent ISLRB proceedings? Consequently, we consider these claims together.

■ Under the Sheriff's Merit System Law (Merit Law) (55 ILCS 5/3—8001 *et seq.* (West 1998)), a sheriff's merit commission may discipline any sheriff's employee subject to the Merit Law pursuant to recognized principles of public employment. 55 ILCS 5/3—8007 (West 1998). Moreover, only the sheriff's merit commission, on application of the sheriff, may discharge or demote, and any such discharge or demotion must be for cause. 55 ILCS 5/3—8014 (West 1998).

■ Under the Illinois Public Labor Relations Act (Labor Relations Act) (5 ILCS 315/1 *et seq.* (West 1998)), the ISLRB may determine whether a public employer subject to the Labor Relations Act has committed an unfair labor practice. An employer commits an unfair labor practice by interfering with a public employee's exercise of rights guaranteed by the Labor Relations Act or by discriminating in regard to any term or condition of employment due to the employee's protected union activity. 5 ILCS 315/10(a)(1), (a)(2) (West 1998)). A party alleging an unfair labor practice may establish the element of causation by showing that the employee's protected activity was a substantial or motivating factor in the employer's decision to take action adverse to the interests of the employee. *City of Burbank v. Illinois State Labor Relations Board*, 128 Ill. 2d 335, 345, 538 N.E.2d 1146, 1149-50 (1989). If the ISLRB determines that an employer committed an unfair labor practice, the ISLRB may "take such affirmative action, including reinstatement of [a public employee] with or without back pay, as will effectuate the purposes of [the Labor Relations Act]." 5 ILCS 315/11(c) (West 1998).

■ Under the doctrine of *res judicata*, a final judgment on the merits rendered by a tribunal of competent jurisdiction acts as a bar to a subsequent action between the parties involving the same cause of action. *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 302, 703 N.E.2d 883, 889 (1998). The doctrine of *res judicata* extends to those issues that could have been fully litigated in a former proceed-

ing, as well as those actually litigated. *River Park, Inc.*, 184 Ill. 2d at 302, 703 N.E.2d at 889.

■ Neither the sheriff nor the county cites any authority for the proposition that an allegation of antiunion motivation would constitute a defense to the sheriff's charges of misconduct. However, even assuming that Huff could have raised the sheriff's motivation before the Merit Commission, Huff could not have fully litigated the claim of an "unfair labor practice" in that forum. Unlike the ISLRB, the Merit Commission is not empowered to order the sheriff to desist from unfair labor practices or to take affirmative action to remedy such practices. It would be incongruous to conclude that a party seeking redress for an unfair labor practice could fully litigate such a claim in a forum without the power to provide such redress.

In addition, whatever preclusive effect the Merit Commission's findings of fact regarding Huff's misconduct might have on subsequent proceedings, those findings are inconsequential to the case at bar. Pursuant to its statutory jurisdiction, the Merit Commission adjudicated the sheriff's charges of misconduct and determined what it considered to be the appropriate sanction for the misconduct. In contrast, the ISLRB determined that Huff's union activities had been a substantial or motivating factor in the sheriff's decision to discipline Huff and to seek his removal. We recognize that, in some instances, the question of whether an employee engaged in misconduct, or whether such misconduct warranted the discipline imposed, may be a significant issue in determining whether the employer committed an unfair labor practice. However, that is not the case here. It is clear from the ISLRB's order that it did not base its decision in any significant measure on a finding that Huff did not engage in misconduct or that such misconduct did not deserve punishment. Instead, the ISLRB primarily relied on facts wholly unrelated to the merits of the misconduct charges or the propriety of the penalty imposed, particularly: (1) the sheriff's expressions of hostility to Huff's union activity; (2) the timing of the discipline; and (3) inconsistencies in the rationale the sheriff offered for imposing the discipline. To the extent that the ISLRB made any findings contrary to those of the Merit Commission, those findings were immaterial to the ISLRB's determination that the sheriff committed an unfair labor practice. Therefore, we hold that the Merit Commission proceedings had no preclusive effect on the subsequent ISLRB proceedings.

In light of our holding, the sheriff and the county lack a valid underlying claim of right to support the extraordinary remedies granted by the circuit court. As a result, we vacate the circuit court order.

## ISLRB Finding of Unfair Labor Practice

■ We next address the contention of the sheriff and the county that the FOP did not present sufficient evidence to the ISLRB to support the finding that the sheriff had committed an unfair labor practice. As we previously stated, under the Labor Relations Act, a charging party may establish that an employer committed an unfair labor practice by proving by a preponderance of the evidence that the employee's protected activity was a substantial or motivating factor in the employer's decision to take action adverse to the interests of the employee. *City of Burbank*, 128 Ill. 2d at 345, 538 N.E.2d at 1149-50. The employer's motive is a question of fact which may be inferred from direct or circumstantial evidence. *City of Burbank*, 128 Ill. 2d at 345, 538 N.E.2d at 1150. Among other factors, the ISLRB may reasonably infer an employer's antiunion motive from (1) the employer's expressions of hostility toward union activity; (2) the proximity in time between the employee's union activity and the employer's adverse action; and (3) inconsistencies between the employer's proffered reason for taking the adverse action and other actions of the employer. *City of Burbank*, 128 Ill. 2d at 346, 538 N.E.2d at 1150. An employer may avoid a finding that it committed an unfair labor practice by showing that the employee would have been disciplined for a legitimate business reason, notwithstanding the employer's antiunion animus. *City of Burbank*, 128 Ill. 2d at 346, 538 N.E.2d at 1150.

■ Judicial review of an administrative agency's decision extends to all questions of law and fact presented in the record. 735 ILCS 5/3—110 (West 1994). Like those of other administrative agencies, the ISLRB's findings and conclusions on questions of fact are *prima facie* true and correct. 735 ILCS 5/3—110 (West 1998). With respect to questions of fact, a reviewing court will not reweigh the evidence or substitute its judgment for that of the ISLRB. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204, 692 N.E.2d 295, 302 (1998). Rather, a reviewing court will uphold an ISLRB decision unless it is against the manifest weight of the evidence. *City of Belvidere*, 181 Ill. 2d at 204, 692 N.E.2d at 302. An ISLRB decision is against the manifest weight of the evidence only where the opposite conclusion is clearly evident. *City of Belvidere*, 181 Ill. 2d at 204, 692 N.E.2d at 302. However, an administrative agency's findings on a question of law are reviewed on a *de novo* basis. *City of Belvidere*, 181 Ill. 2d at 205, 692 N.E.2d at 302. The ISLRB's finding is factual because it involves considering whether the facts support a finding that the sheriff disciplined and discharged Huff in retaliation for his protected union activities, thereby committing an unfair labor practice. The ISLRB's finding also involves a question of law in that it consid-

ers whether the employer's acts interfered with the employee's rights guaranteed under the Labor Protection Act or discriminated in regard to any term or condition of employment due to his protected union activities. Because the ISLRB's determination is a mixed question of law and fact, we review under the clearly erroneous standard. *City of Belvidere*, 181 Ill. 2d at 205, 692 N.E.2d at 302.

In this case, the ISLRB based its finding that the sheriff and the county had committed an unfair labor practice on the sheriff's hostile references to Huff's union activity, the short interval between Huff's success in arbitration and the sheriff's disciplinary action, the timing of the discipline, and the sheriff's false assertion that he had applied progressive discipline. The sheriff does not dispute that he and his undersheriff made the clearly hostile statements regarding Huff's pursuit of this grievance. Moreover, we must agree with the ISLRB that the timing of the discipline in this case supports a finding of retaliatory motive. The sheriff reprimanded Huff only three weeks after Huff prevailed in the arbitration proceeding. In addition to this reprimand, the sheriff suspended Huff twice and acted to remove him from the force within seven months of the arbitrator's order. We also agree with the ISLRB that the sheriff's assertion that he applied progressive discipline was incredible in light of the fact that the sheriff sought Huff's removal for the August domestic violence incident that, obviously, took place prior to the September suspensions. Therefore, we cannot say that it is clearly evident that the sheriff lacked an antiunion motive in disciplining Huff. Consequently, the ISLRB's finding of an unfair labor practice is not clearly erroneous.

### Sanctions

Next, we consider the sheriff and the county's claim that the ISLRB abused its discretion when it imposed sanctions against the sheriff. The FOP requested sanctions on the bases that: (1) the sheriff breached an agreement, made before the ALJ, in which the parties agreed not to seek sanctions against each other; and (2) the sheriff, without reasonable cause, falsely alleged that Huff did not file his grievances. The sheriff responded that the FOP did not timely file its motion for sanctions.

On appeal, the sheriff renews his argument. Additionally, the sheriff contends that the agreement not to seek sanctions covered only the proceedings before the ALJ and not before the ISLRB; therefore, he did not violate the agreement. Moreover, the sheriff maintains that, although untrue, he had reasonable cause to allege that Huff did not timely file or arbitrate his grievances.

The Labor Relations Act gives the ISLRB discretion to order an

"appropriate sanction, based on the [ISLRB's] rules and regulations, *** if the other party has made allegations or denials without reasonable cause and found to be untrue or has engaged in frivolous litigation for the purpose of delay or needless increase in the cost of litigation." 5 ILCS 315/11(c) (West 1998). Under the ISLRB rules, when an ALJ has issued a recommended decision, a motion for sanctions may be filed "no later than seven days after receipt of the last brief scheduled to be filed with the [ISLRB]." 80 Ill. Adm. Code § 1220.90(d)(3) (1998).

Having carefully reviewed the record, the evidence supports the ISLRB's conclusions on this issue. First, regarding the timeliness of the FOP's motion for sanctions, on November 10, 1997, the ISLRB received the last brief scheduled to be filed. Since, therefore, any motion for sanctions was due by November 17, the FOP timely filed its motion on November 14. Second, the parties clearly agreed at the close of the hearing before the ALJ that neither would pursue sanctions against the other. Specifically, the sheriff's counsel stated, "the sheriff is going to drop any request for sanctions." The sheriff did not, either expressly or impliedly, limit that agreement to the administrative proceedings. Accordingly, we cannot say that the ISLRB abused its discretion by finding that the sheriff violated the agreement.

Concerning the sheriff's allegations that Huff did not timely file his grievances, the sheriff concedes the untruth of the allegations. The sheriff also lacked reasonable cause for making the allegations in that he failed to demonstrate that he made sufficient inquiry into the facts before asserting that the grievances were untimely and vigorously pursuing that assertion during the administrative proceedings. In addition, the sheriff falsely and without reasonable cause alleged that the FOP did not pursue arbitration of Huff's grievances. The record reveals that the parties entered into a formal arbitration agreement that deferred the unfair labor practice charge to the parties' contractual grievance arbitration procedure. The sheriff later revoked the arbitration agreement. Thus, the sheriff, not the FOP, bore primary responsibility for preventing arbitration. Consequently, we leave undisturbed the sanctions the ISLRB imposed.

## County Liability as a Joint Employer

Finally, having affirmed the finding of an unfair labor practice, we must determine whether the ISLRB properly applied its order to the county. In counties with a population of less than 1 million, the sheriff controls the internal operations of his office subject only to the county board's appropriations power. 55 ILCS 5/3—6018 (West 1996). Nevertheless, effective January 1, 1986, the Labor Relations Act's definition

of "public employer" or "employer" was amended to provide that "[c]ounty boards and county sheriffs shall be designated as joint or co-employers of county peace officers appointed under the authority of a county sheriff." Pub. Act 84—1104, eff. January 1, 1986 (adding Ill. Rev. Stat. 1985, ch. 48, par. 1603(o) (now 5 ILCS 315/3(o) (West 1998))).

The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Paris v. Feder*, 179 Ill. 2d 173, 177, 688 N.E.2d 137, 139 (1997). Where a statute's language is unambiguous, a court should not read limitations into the statute. *Gem Electronics of Monmouth, Inc. v. Department of Revenue*, 183 Ill. 2d 470, 475, 702 N.E.2d 529, 532 (1998). The construction of a statute is a question of law subject to *de novo* review. *Boaden v. Department of Law Enforcement*, 171 Ill. 2d 230, 237, 664 N.E.2d 61, 65 (1996).

■ Contrary to the county's assertion, nothing in the Labor Relations Act, or in case law interpreting its provisions, limits a joint employer's liability for unfair labor practices to those arising from the bargaining process itself. See *County of Kane v. Illinois State Labor Relations Board*, 165 Ill. App. 3d 614, 518 N.E.2d 1339 (1988); see also *County of Will v. Illinois State Labor Relations Board*, 220 Ill. App. 3d 62, 580 N.E.2d 887 (1991). Nor is a county's liability under the Labor Relations Act akin to *respondeat superior* so as to bring it within our supreme court's holding in *Moy v. County of Cook*, 159 Ill. 2d 519, 640 N.E.2d 926 (1994) (county could not be held vicariously liable for sheriff's alleged negligence in wrongful death action).

Moreover, at the time the legislature amended the Labor Relations Act to make county boards joint employers, an "unfair labor practice" was not limited to a refusal to bargain collectively (Ill. Rev. Stat. 1985, ch. 48, par. 1610(a)(4)). Rather, the statute prohibited a variety of conduct outside of the negotiating process, including the sort of conduct alleged in the case at bar (Ill. Rev. Stat. 1985, ch. 48, pars. 1610(a)(1), (a)(2) (now 5 ILCS 315/10(a)(1), (a)(2) (West 1998))). In amending a statute, the legislature is presumed to act rationally and with full knowledge of all previous enactments. *State v. Mikusch*, 138 Ill. 2d 242, 247-48, 562 N.E.2d 168, 171 (1990). Therefore, in the absence of any language limiting the scope of unfair labor practices for which a county may be liable, we must presume that the legislature intended that a county board be liable as a joint employer for any unfair labor practice involving a sheriff's peace officer.

## CONCLUSION

In sum, we conclude that because the unfair labor practice charge could not be litigated in the Merit Commission proceeding, the Merit

Commission's determination did not preclude the Illinois State Labor Relations Board hearing on the charge. Further, we conclude that (1) the Illinois State Labor Relations Board did not abuse its discretion when it imposed sanctions on the sheriff for filing a motion for sanctions that contained false allegations and violated an agreement not to seek sanctions, and (2) the county is a joint employer with the sheriff and the Illinois State Labor Relations Board properly applied its decision to the county as well as to the sheriff. Accordingly, we affirm the Illinois State Labor Relations Board's order and vacate the circuit court's order granting a writ of prohibition and declaratory judgment.

Affirmed in part; vacated in part.

SLATER, P.J., concurs.

JUSTICE BRESLIN, specially concurring in part and dissenting in part:

I concur with the entirety of the majority's opinion, save its conclusion that the County may be held jointly or vicariously liable for the unfair labor practice committed by the sheriff.

The majority hinges its determination on the fact that the Labor Relation Act provides that county boards are designated joint employers of county peace officers. I find it difficult to fathom how this fact compels the majority to impute the unfair labor practices committed by the sheriff to the county.

The majority cites *Moy v. County of Cook*, 159 Ill. 2d 519, 640 N.E.2d 926 (1994), stating that its holding is inapplicable to this case because the county's liability is not being derived under the doctrine of *respondeat superior* liability.

In *Moy*, the plaintiff brought a negligence suit against the county on behalf of his decedent, who died while confined as an inmate in the county jail. The county moved to dismiss the complaint based upon the fact that it was not a proper party defendant. The trial court granted the motion and the appellate court and the supreme court affirmed.

The supreme court concluded that the sheriff was a county officer and not a county employee. *Moy*, 159 Ill. 2d at 532, 640 N.E.2d at 931. In reaching this decision, the court reasoned that the sheriff was an independently elected official and the county was given no authority to control his office. *Moy*, 159 Ill. 2d at 526-29, 640 N.E.2d at 929-30. Because the sheriff was an officer and not an employee of the county, the county could not be held liable under the doctrine of *respondeat superior* liability. *Moy*, 159 Ill. 2d at 529-30, 640 N.E.2d at 930. To

impute negligence of one person to another requires the existence of either a master and servant, principal and agent, or employer and employee relationship. *Moy*, 159 Ill. 2d at 524, 640 N.E.2d at 928; see also *Palmer v. Miller*, 380 Ill. 256, 43 N.E.2d 973 (1942).

There have been no independent acts attributed to the county that could be construed as unfair labor practices in this case. So on what then does the majority base its finding of joint liability?

The sheriff, like the sheriff in *Moy*, acted independently, without any directives or orders from the county. In fact, the duty owed to Huff by the sheriff was imposed by the Labor Relations Act and had nothing to do with the county, which has no authority to direct the actions of the sheriff with regard to employment decisions.

Thus, regardless of the county's joint employer status concerning Huff, there is no relationship, either employer and employee or otherwise, between the sheriff and the county by which vicarious liability can be imposed. See *Moy*, 159 Ill. 2d at 524, 640 N.E.2d at 928. Because there is no basis upon which to hold the county liable for the unfair labor practices in this case, I respectfully dissent to that portion of the majority's opinion which holds otherwise.