# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 04-3782

CHESTER A. LAUTH,

*Plaintiff-Appellant,*

v.

DANIEL L. MCCOLLUM,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 8529—**Samuel Der-Yeghiayan**, *Judge.*

_____

ARGUED JUNE 10, 2005—DECIDED SEPTEMBER 20, 2005

_____

Before FLAUM, *Chief Judge*, and POSNER and KANNE, *Circuit Judges*.

POSNER, *Circuit Judge*. The plaintiff, Lauth, a police officer in the Chicago suburb of LaGrange Park, sued his police chief, McCollum, under 42 U.S.C. § 1983. The suit charged that McCollum (and the Village, but it's been dropped as a defendant) had deprived Lauth of the equal protection of the laws by asking the Village's Board of Police Commissioners to sanction him for misfeasance. (The Board obliged.) The district judge granted summary judgment for the defendants, and Lauth appeals.

A woman had reported her 11-year-old son missing, and, though the child was found the next day unharmed, Lauth

in responding to the report had failed to comply not only with standard operating procedures for handling missing-persons reports but also with statutory requirements. See Intergovernmental Missing Child Recovery Act, 325 ILCS 40/1-8. The Board, upon McCollum's complaint, ordered Lauth suspended without pay for a total of 60 days. He could have sought judicial review of the Board's decision in the Illinois state courts, 65 ILCS 5/10-2.1-17; *Van Milligan v. Board of Fire & Police Comm'rs*, 630 N.E.2d 830, 836 (Ill. 1994), but he did not, and instead brought the present suit, in which he implausibly seeks some $20,000 in compensatory damages (his annual salary is only $59,000 and one-sixth of that is not even $10,000), plus an undetermined amount of damages for emotional distress, plus punitive damages and attorneys' fees.

Lauth claims that McCollum's action in hauling him before the Board was motivated by animus (hostility, dislike, ill will), and so he is appealing to the "class of one" theory of denial of equal protection. E.g., *Village of Willowbrook v. Olech*, 528 U.S. 562, 564-65 (2000) (per curiam); *Crowley v. McKinney*, 400 F.3d 965, 972 (7th Cir. 2004). Lauth had been instrumental in getting the Village police force unionized, and McCollum had been down on him ever since, Lauth testified. He also testified that years earlier another officer had not been disciplined for mishandling a missing-person complaint; though in that case the missing person had been an adult rather than a child.

There is clearly something wrong with a suit of this character coming into federal court dressed as a constitutional case. At argument one of Lauth's lawyers candidly described it as a grudge suit, as in fact the latest move in a labor dispute. McCollum may conceivably be guilty of retaliation against Lauth (by having reported him to the Board) for Lauth's union activities. But, if so, Illinois labor

law, which governs the Village's labor relations, 5 ILCS 315/1-27; *Grchan v. Illinois State Labor Relations Board*, 734 N.E.2d 33, 39 (Ill. App. 2000), provides an adequate remedy. 5 ILCS 315/10(a)(2), 11(c); *Administrative Office of Illinois Courts v. State & Municipal Teamsters, Chauffeurs & Helpers Union, Local 726*, 657 N.E.2d 972, 981 (Ill. 2000). At argument, Lauth's lawyer told us—against his interest in minimizing his client's alternative remedies—that the National Labor Relations Act might also provide Lauth with a remedy. It would not; the Act does not apply to state or municipal employees. 29 U.S.C. § 152(2); *Abood v. Detroit Board of Education*, 431 U.S. 209, 223 (1977).

Lauth might lose a retaliation suit. McCollum might be able to show that he would have reported Lauth's violation of police and statutory regulations intended for the safety of missing persons to the Board whether or not he was on the outs with Lauth over the union; and that would be a complete defense, *City of Burbank v. Illinois State Labor Relations Board*, 538 N.E.2d 1146, 1150 (Ill. 1989); *County of Menard v. Illinois State Labor Relations Board*, 560 N.E.2d 1236, 1244 (Ill. App. 1990), just as it would be in a "mixed motive" federal employment discrimination case. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 93 (2003). It is not as if McCollum suspended Lauth; the Board did; and so a retaliation suit might fail on the distinct ground that to allow Lauth to obtain damages against McCollum would nullify the Board's lawful sanction. But see *Grchan v. Illinois State Labor Relations Board*, *supra*, 734 N.E.2d at 39-40. It is not as if the charges were trumped up, the sanction excessive, or the Board in cahoots with McCollum. None of these things has been shown.

The reason the case has gotten as far as it has is the uncertainty that attends "class of one" equal protection cases. *Lunini v. Grayeb*, 395 F.3d 761, 772 (7th Cir. 2005);

*Jennings v. City of Stillwater*, 383 F.3d 1199, 1211-12 (10th Cir. 2004); *Bell v. Duperrault*, 367 F.3d 703, 709 (7th Cir. 2004) (concurring opinion). These are cases in which the plaintiff does not claim to be a member of a class that the defendant discriminates against, but argues only that he is being treated arbitrarily worse than some one or ones identically situated to him. If that is the law and any unexplained or unjustified disparity in treatment by public officials is therefore to be deemed a prima facie denial of equal protection, endless vistas of federal liability are opened. Complete equality in enforcement is impossible to achieve; nor can personal motives be purged from all official action, especially in the frequently tense setting of labor relations. If reporting Lauth's misfeasance violated the Constitution, McCollum might as well resign, since he will lose all control over Lauth and any other officer with whom McCollum may have clashed over labor issues. It would be a paradox, moreover, to provide federal judicial protection (in the name of equal protection of the laws) for the union activities of a part of the workforce (namely state and municipal employees) that Congress has placed outside the protection of federal labor law.

The paradigmatic "class of one" case, more sensibly conceived, is one in which a public official, with no conceivable basis for his action other than spite or some other improper motive (improper because unrelated to his public duties), comes down hard on a hapless private citizen—perhaps the holder of a license from the state to operate a bar or restaurant or other business—depriving him of a valuable property right that identically situated citizens toward whom the official bears no ill will are permitted the unfettered enjoyment of. E.g., *Village of Willowbrook v. Olech, supra*, 528 U.S. at 563; *Esmail v. Macrane*, 53 F.3d 176, 178 (7th Cir. 1995); *Cruz v. Town of*

*Cicero*, 275 F.3d 579, 582, 587-88 (7th Cir. 2001); *Squaw Valley Development Co. v. Goldberg*, 375 F.3d 936, 944, 947 (9th Cir. 2004). As one moves away from the paradigmatic case, the sense of a wrong of constitutional dignity, and of a need for a federal remedy, attenuates. And when as in this case the unequal treatment arises out of the employment relation, the case for federal judicial intervention in the name of equal protection is especially thin. Given the legal protections that tenured public employees such as Lauth enjoy, see 65 ILCS 5/10-2.1-17, which include the right to sue in federal or state court under section 1983 for a deprivation of property (a tenure employment contract being considered a property right for due process purposes) without due process of law, e.g., *Swick v. City of Chicago*, 11 F.3d 8, 86 (7th Cir. 1993), there is no gap in legal protections to justify dragging in equal-protection concepts designed for entirely different situations. And when the public employee does not have tenure, imposing a norm of equal treatment changes employment at will, or (what is the same thing) probationary employment, into something very close to tenured employment because it is so easy to invent a case of unequal treatment by a supervisor. The principal effect of "class of one" suits by public employees is, as this case illustrates, to undermine discipline in public agencies. In the particular case, as we said, it is also to inject the federal courts into an area of labor relations that Congress disclaimed a federal interest in.

We are therefore not surprised to have found no "class of one" cases in which a public employee has prevailed, *Levenstein v. Salafsky*, 414 F.3d 767 (7th Cir. 2004); *Hedrich v. Board of Regents*, 274 F.3d 1174 (7th Cir. 2001); *Staples v. City of Milwaukee*, 142 F.3d 383 (7th Cir. 1998); *Orr v. City of Albuquerque*, No. 03-2287, 2005 U.S. App. LEXIS 15852, at *13 n. 6 (10th Cir. Aug. 2, 2005); *Neilson v. D'Angelis*, 409 F.3d

100, 106 (2d Cir. 2005); *Campagna v. Massachusetts Dept. of Environmental Protection*, 334 F.3d 150, 156 (1st Cir. 2003), since the extreme case that kicked off the "class of one" movement more than two decades ago. That was *Ciechon v. Chicago*, 686 F.2d 511 (7th Cir. 1982), where a paramedic was made a scapegoat for conduct that had drawn the wrath of the local media, while her identically situated partner received no disciplinary sanction at all. Our case is remote from that one. Lauth has identified no other officer who despite being similarly situated was deliberately treated differently, *McDonald v. Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004), let alone one who was "prima facie identical in all relevant respects." *Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002). He has not shown that "totally illegitimate animus . . . was the sole cause" of McCollum's reporting his misfeasance to the Board. *Nevel v. Village of Schaumburg*, 297 F.3d 673, 681 (7th Cir. 2002); cf. *Esmail v. Macrane*, *supra*, 53 F.3d at 179.

As the Tenth Circuit noted in *Jennings v. City of Stillwater*, *supra*, 383 F.3d at 1211, "In the wake of *Olech*, the lower courts have struggled to define the contours of class-of-one cases. All have recognized that, unless carefully circum-scribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors." We are still struggling to circumscribe this amorphous cause of action. In light of *Ciechon*, and reluctant to complicate the law by proposing different standards for different categories of discriminatory state action, we decline to rule that a public employee can *never* maintain a class-of-one case. A more promising approach, and one that, incidentally, enables reconciliation of the two lines of class-of-one cases in our case law—the "animus" and the "ratio-nal basis" lines, see *Crowley v. McKinney*, 400 F.3d 965, 972

(7th Cir. 2004)—is simply to remind that a plaintiff who does not belong to any "suspect" (that is, favored) class—by definition, the situation of a class-of-one plaintiff—must, to prevail, "negative any reasonably conceivable state of facts that could provide a rational basis for the classification." *Board of Trustees v. Garrett*, 531 U.S. 356, 367 (2001); *Lamers Dairy, Inc. v. U.S. Dept. of Agriculture*, 379 F.3d 466, 473 (7th Cir. 2004). "Governmental action only fails rational basis scrutiny if no sound reason for the action can be hypothesized." *Id.*; see also *FCC v. Beach Communications*, 508 U.S. 307, 315 (1993). Our decision in *Esmail v. Macrane*, *supra*, 53 F.3d at 180, evoked that approach, stating that the target of class-of-one cases is "governmental action wholly impossible to relate to legitimate governmental objectives." There is additional support for the approach in *Ross v. Duggan*, 402 F.3d 575, 587-88 (6th Cir. 2004), and *Kirby v. City of Elizabeth City*, 388 F.3d 440, 447-48 (4th Cir. 2004). Animus thus comes into play only when, no rational reason or motive being imaginable for the injurious action taken by the defendant against the plaintiff, the action would be inexplicable unless animus had motivated it.

Since hypothesis is not proof, this test that we have articulated can often be applied in advance of discovery. *Wroblewski v. Washburn*, 965 F.2d 452, 459-60 (7th Cir. 1992); *Ross v. Duggan*, *supra*, 402 F.3d at 589; *Connolly v. McCall*, 254 F.3d 36, 42 (2d Cir. 2001) (per curiam); *Knapp v. Hanson*, 183 F.3d 786, 789 (8th Cir. 1999). It could have been here.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*