**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 19, 2006[*]
Decided June 20, 2006

**Before**

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. FRANK H. EASTERBROOK, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 05-3433

| | |
|---|---|
| MELVIN L. GLOVER, <br>     *Plaintiff-Appellant,* <br><br>     *v.* <br><br> BOARD OF EDUCATION OF THE <br> ROCKFORD PUBLIC SCHOOLS, <br> DISTRICT 205, *et al.*, <br>     *Defendants-Appellees.* | Appeal from the United States District Court for the Northern District of Illinois, Western Division <br><br> No. 02 C 50143 <br><br> Philip G. Reinhard, <br> *Judge.* |

**O R D E R**

Melvin Glover was hired in 1993 to teach social studies at a high school in Rockford, Illinois. His employment was covered by a contract called the Professional Agreement between the Board of Education and the Rockford Education Association ("REA"), a teachers union. Glover, who is black, had gained

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

tenure by April 2001 when the Board advertised an opening for an economics teacher at his school. He asked several times to switch from his assignment at the time to the economics position but was turned down; after the spot had been advertised at least three times, it was filled in August 2001 by a white female. Unhappy at being passed over for the position, Glover asked the REA to intervene with the Board, but the union refused.

In November 2001 Glover received an "unsatisfactory" evaluation and "notice that he was going to be placed on remediation." This followed statutorily mandated observations of his classroom performance by school administrators, as well as two reprimands for jeopardizing the health or safety of his students. One week after receiving this evaluation, Glover filed a charge of discrimination with the Equal Employment Opportunity Commission. He claimed that, on account of his race and gender, school administrators had made disparaging remarks about him, failed to support his discipline of students, and falsely accused him of incompetence and disregarding school policies. Meanwhile, in December 2001, the Board adopted a remediation and evaluation plan intended to run from that month until June 2002. In April 2002, while still employed, Glover brought suit against the Board, the REA, and various employees of both. He repeated the allegations in his EEOC charge and claimed that all of the named defendants had engaged in employment discrimination and breached the Professional Agreement.

On June 11, the Board voted in a closed session to notify Glover that it intended to terminate his employment. The written notice informed Glover that he could request a hearing, which he did, and the hearing was scheduled for October. But Glover, who apparently questioned the hearing officer's impartiality, withdrew his request in September and allowed the termination to take effect. By then Glover had received right-to-sue letters on additional charges of discrimination he had filed with the EEOC, and after losing his job he amended his complaint to claim, as relevant here, that the Board discriminated against him by passing him over for the economics position in favor of a white female and deprived him of due process by firing him without predeprivation process, and that both the Board and the REA breached their respective obligations under the Professional Agreement.

The parties cross-moved for summary judgment, though Glover failed to comply with Local Rule 56.1 and so the district court accepted the defendants' factual representations as uncontested. In granting summary judgment for the defendants, the court opined that Glover's suit "appears to be a case of a disgruntled employee who has essentially dumped all his gripes into the legal mixing bowl expecting the court to sort it all out." The court wrote that it found "no evidence, direct or indirect, that shows any discriminatory motive related to plaintiff's termination," and no evidence of discrimination on the part of the REA. As for Glover's due process claim, the district court concluded that the Board had offered

Glover a pretermination hearing that he declined. Having resoled all other claims, the court declined to exercise supplemental jurisdiction over Glover's contract claims, which the court characterized as arising solely under state law.

Glover first argues that he established a *prima facie* case of employment discrimination by showing that he was qualified for the open teaching position but denied a transfer to that job. But Glover was proceeding under the indirect method, s*ee McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), and consequently he needed to produce evidence that not getting the desired transfer constituted an adverse employment action, *see Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 274-75 (7th Cir. 2004); *Johnson v. Cambridge Indus., Inc.,* 325 F.3d 892, 898 (7th Cir. 2003). "Typically, adverse employment actions are economic injuries such as dismissal, suspension, failure to promote, or diminution in pay." *Markel v. Bd. of Regents of Univ. of Wis. Sys.*, 276 F.3d 906, 911 (7th Cir. 2002). Denying an employee's request for a transfer that would not increase his pay or benefits is generally not an adverse employment action. *See Dandy*, 388 F.3d at 275. We have held that denying a transfer with no immediate consequences to pay can qualify as an adverse employment action if it "significantly reduces the employee's career prospects." *Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 744 (7th Cir. 2002) (an involuntary transfer can be an adverse action if it has "a future rather than present harm"). Glover did not even attempt to show that the position of economics teacher entailed any increase in pay or benefits, or that teaching a different subject would protect or enhance his future career. Accordingly, the district court properly awarded summary judgment for the defendants.

Glover next contends that the district court wrongly analyzed his claim that the Board fired him without a pretermination hearing and thus denied him due process. The district court focused on the fact that Glover withdrew his request for a hearing, which already had been scheduled for October, and Glover does not dispute that he voluntarily cancelled that hearing. But he says the abandoned hearing is irrelevant; he characterizes the Board's closed meeting that resulted in notice of his proposed dismissal as the point of his actual termination, and argues that he was deprived of due process by not being allowed to participate in that meeting. According to Glover, he was entitled to a predeprivation hearing, and, in his view, an October hearing would have come after, not before, his discharge. He is mistaken on both the law and the facts.

We have held that post-termination process, if "characterized by promptness and by the ability to restore the claimant to possession," is sufficient to protect the interests of a public employee where there has also been some minimal pretermination process. *Baird v. Bd. of Educ.*, 389 F.3d 685, 692 (7th Cir. 2004) ("The underlying concept seems to be that the remedy is available before the loss has become complete and irrevocable."). Such pretermination process must include

"notice of the charges," an explanation of the evidence against the employee, and "an opportunity for the employee to tell his or her side of the story." *Head v. Chi. Sch. Reform Bd. of Trs.*, 225 F.3d 794, 803-04 (7th Cir. 2000). All of that was given here; six months before the closed meeting of the Board, Glover's remediation plan had given him notice of, and an opportunity to respond to, the perceived deficiencies in his performance that led to his termination. And the October hearing had the "ability to restore [Glover] to possession." *Baird*, 389 F.3d at 692. Under 105 ILCS 5/24-12, which governs the termination of teachers, a teacher who prevails at such a hearing or on appeal is entitled to remuneration and compensation "including but not limited to loss of income and costs incurred," as well as reinstatement or assignment "to a position substantially similar to the one which that teacher held prior to that teacher's suspension or dismissal." *Id.* § 5/24-12, paras. 4, 5.

Even as post-termination process, then, the October hearing would have sufficed to protect Glover's interest in continued employment. But Illinois law makes it clear that the cancelled hearing would have been pretermination process, because Glover would have remained employed until after his request for a hearing was resolved. The very purpose of the hearing was to "make a decision as to whether or not the teacher *shall be* dismissed," although "the board may suspend the teacher pending the hearing." *See id.*, paras. 2, 3 (emphasis added). Glover was offered adequate process, and may not now press a claim that he was denied the same process that he declined to take part in. *See Scaife v. Racine County*, 238 F.3d 906, 908 (7th Cir. 2001) ("An employee cannot be permitted to hang on to his job just by refusing to show up at a pretermination hearing.")

Glover's final contention is that the district court erred by treating his claim that the defendants breached the Professional Agreement as one arising under state law. He argues that, because the contract is a collective-bargaining agreement, his claim raises a federal question over which the district court had original subject matter jurisdiction. He cites in support of this argument decisions where federal jurisdiction arose under the Labor Management Relations Act, *see* 29 U.S.C. § 185(a), or the National Labor Relations Act, *id.* § 151 *et seq.*, but those cases involved labor-contract disputes between private litigants. *See Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554 (1976); *Vaca v. Sipes*, 386 U.S. 171 (1967); *Humphrey v. Moore*, 375 U.S. 335 (1964). The Board is an agency of the municipality, *see Horwitz v. Bd. of Educ.*, 260 F.3d 602, 619 (7th Cir. 2001); *Smith v. Chi. Sch. Reform Bd. of Trs.*, 165 F.3d 1142, 1148 (7th Cir. 1999)*,* and the National Labor Relations Act "does not apply to state or municipal employees." *Lauth v. McCollum*, 424 F.3d 631, 632 (7th Cir. 2005). Nor, for the same reason, does the National Labor Relations Act give any jurisdiction to federal courts over claims such as Glover's. *See* 29 U.S.C. § 152(2) (excluding state agencies from the definition of "employer"); *Strasburger v. Bd. of Educ.*, 143 F.3d 351, 359-60 (7th Cir. 1998) (Labor-Management Relations Act does not grant jurisdiction over claims

against public employer).  Glover asserted no other basis for federal jurisdiction, and the district court acted within its discretion in declining to exercise supplemental jurisdiction over this state-law claim after dismissing Glover's federal claims.  *See* 28 U.S.C. § 1367(c)(3); *Looper Maint. Serv. Inc. v. City of Indianapolis*, 197 F.3d 908, 914 n.6 (7th Cir. 1999).

AFFIRMED.