WAL-MART STORES, INC., Petitioner-Appellant, v. THE HUMAN RIGHTS COMMISSION *et al.*, Respondents-Appellees (The Department of Human Rights, Respondent).

Second District    No. 2—98—1614

Opinion filed September 16, 1999.

Liza S. Graham and William J. Holloway, both of Hinshaw & Culbertson, of Chicago, for appellant.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Janon E. Fabiano, Assistant Attorney General, of counsel), for appellee Human Rights Commission.

Timothy A. Bridge, of Wheaton, for appellee Cynthia McQueary.

JUSTICE INGLIS delivered the opinion of the court:

This is an action for direct administrative review of a decision of the Illinois Human Rights Commission (HRC). Respondent, Cynthia McQueary, filed a civil rights complaint against petitioner, Wal-Mart

Stores, Inc. (Wal-Mart), alleging that Wal-Mart had discharged her on the basis of her gender in violation of the Illinois Human Rights Act (Act) (775 ILCS 5/1—101 *et seq.* (West 1996)). Wal-Mart denied that it discriminated against her and argued that it discharged her for leaving work early. The administrative law judge issued a recommended liability determination, and the HRC sustained the complaint, ordering Wal-Mart to reinstate McQueary and award her damages. We affirm.

McQueary worked for Wal-Mart as a night receiving associate from February 16, 1993, to June 25, 1995. During her employment with Wal-Mart, she received acceptable performance reviews and several merit pay increases. Her immediate supervisor was Scott Dierking, who reported to Paul Baird, the night shift manager. McQueary was the only female in the receiving area. She worked with 10 to 15 male employees. McQueary testified that the male employees would make derogatory remarks to her. She complained to a manager in March of 1995, but the behavior continued.

On June 22, 1995, Baird told McQueary and the other employees that a shipment of fans was to be unloaded and kept separate from other merchandise. McQueary tried to separate the fans according to her supervisor's instructions, but some of her male coworkers placed other merchandise on the fans' pallets. When she tried to stop them, they taunted her. One of her male coworkers, Israel Pena, laughed and told her to get back in the truck and called her a "little girl." This behavior made McQueary cry. Pena called her a "cry baby" and said, "We don't need that, bitch." After that, McQueary headed to the front of the store to leave work before the end of her shift.

McQueary told Baird that she was tired of the way she was being treated and explained that her male coworkers were mixing up the merchandise on the pallets. She told Baird that she was too upset to continue working that night and wished to go home. McQueary advised Baird that if the harassment did not stop she would have to consider giving her two-week notice. Baird then unlocked the door and walked McQueary to her car.

When McQueary returned to work on her next scheduled work night, Baird told her that she was terminated for leaving work without permission. McQueary's coworkers who had taunted her and mixed up the merchandise on her pallets were not disciplined in any way.

On July 3, 1995, McQueary filed a charge against Wal-Mart alleging discrimination on the basis of sex. Specifically, she alleged that her termination for leaving early was a pretext for sex discrimination. According to her, similarly situated male employees were subject to "progressive discipline" before termination and were not subject to termination for leaving their shift early. The administrative law judge

agreed with McQueary, and the HRC sustained McQueary's complaint, finding that Wal-Mart's articulated reason for terminating her was a pretext for sex discrimination because the evidence showed that it treated McQueary more severely than her male coworkers for similar misconduct and that there was no rational business reason for doing so. Wal-Mart timely appeals.

Before addressing the merits of the appeal, we note that the HRC contends that Wal-Mart's statement of facts is inaccurate and argumentative. We have reviewed Wal-Mart's statement of facts, and we now strike those portions which fail to comply with Supreme Court Rule 341(e)(6) (177 Ill. 2d R. 341(e)(6)).

■ When reviewing the decision of an administrative agency, the agency's factual findings are held to be *prima facie* true and correct. 735 ILCS 5/3—110 (West 1996). The Act provides that, upon judicial review, the HRC's findings of fact should be sustained unless they are against the manifest weight of the evidence. *Raintree Health Care Center v. Illinois Human Rights Comm'n*, 173 Ill. 2d 469, 479 (1996). A decision is contrary to the manifest weight of the evidence only when no rational trier of fact could have agreed with the agency's decision because an opposite conclusion is clearly evident. *Clyde v. Human Rights Comm'n*, 206 Ill. App. 3d 283, 290 (1990). A reviewing court may not reweigh the evidence or substitute its judgment for that of the trier of fact. *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 180 (1989). This is particularly true of credibility determinations. *Zaderaka*, 131 Ill. 2d at 180.

■ In order to establish an employment discrimination claim, the plaintiff must first establish by a preponderance of the evidence a *prima facie* case of unlawful discrimination. *Zaderaka*, 131 Ill. 2d at 178-79. If a *prima facie* case is established, a rebuttable presumption arises that the employer unlawfully discriminated against the plaintiff. *Zaderaka*, 131 Ill. 2d at 179. To rebut the presumption, the employer then must articulate, not prove, a legitimate, nondiscriminatory reason for its decision. *Zaderaka*, 131 Ill. 2d at 179. Finally, if the employer articulates a legitimate reason, the presumption of unlawful discrimination falls, and the plaintiff must prove by a preponderance of the evidence that the employer's articulated reason was not its true reason but was instead a pretext for unlawful discrimination. *Zaderaka*, 131 Ill. 2d at 179.

■ To establish a *prima facie* case of sex discrimination, the plaintiff must prove (1) she is a member of a protected class; (2) she was performing her job satisfactorily; (3) she was discharged despite the adequacy of her work; and (4) similarly situated employees who were not members of the protected group were not discharged. See *Marinelli v. Human Rights Comm'n*, 262 Ill. App. 3d 247, 253 (1994).

■ Wal-Mart argues first that McQueary failed to establish the fourth element of the *prima facie* case. We disagree. The evidence established that John Kacirek was a similarly situated male employee who was not discharged for leaving work early. Like McQueary, Kacirek had been employed by Wal-Mart as an unloader on the night shift. He left work on a number of occasions prior to the end of his shift. In one instance, he became angry with his supervisor and left work. He told his supervisor, "I'm out of here." Kacirek was not disciplined for this incident, and, when he returned to work, he was merely told not to do it again.

Wal-Mart argues that, unlike McQueary, Kacirek had permission to leave because the supervisor said "go." In McQueary's case, the supervisor opened the door for her and escorted her to her car but did not tell her she did not have permission to leave early. The supervisor's conduct in this case permits an inference that he approved McQueary's early departure even though he did not verbally grant permission. Thus, we find the circumstances in this case to be sufficiently parallel with those in Kacirek's case to permit an inference of comparability. See *Loyola University v. Human Rights Comm'n*, 149 Ill. App. 3d 8, 19 (1986) (precise equivalence is not required). Accordingly, we find that McQueary met her burden of establishing a *prima facie* case of unlawful discrimination by a preponderance of the evidence.

The issue then becomes whether Wal-Mart articulated a legitimate, nondiscriminatory reason for discharging McQueary for leaving work early or whether the reason is pretextual or unworthy of credence. Whether an employer's articulated reason is pretextual is a question of fact. *Zaderaka*, 131 Ill. 2d at 180. The HRC's findings of fact shall be sustained unless the court determines that such findings are contrary to the manifest weight of the evidence. *Zaderaka*, 131 Ill. 2d at 180.

Wal-Mart claimed that its reason for discharging McQueary was legitimate because she left work before the end of her shift without permission. We agree with the HRC's finding that Wal-Mart's explanation in support of the termination was pretextual. First, the evidence shows that Kacirek left work prior to the end of his shift and was not disciplined for it. Second, there was evidence that McQueary's male coworkers had previously harassed her and that McQueary's supervisors had acquiesced in this conduct. The circumstances leading up to her departure that night showed that McQueary was affected by the harassment from her male co-workers while she had been trying to carry out Baird's instructions for unloading merchandise. McQueary told Baird about the harassment and that the receiving crew was not following his instructions. In contrast, none of the other male employ-

ees who were harassing her and who failed to follow orders were discharged or disciplined. In fact, while Baird admitted that the conduct of some of the male coworkers was inappropriate, he stated that he "wanted them to enjoy themselves." Thus, despite the inappropriateness of her male coworkers' conduct, it is clear that management was more lenient with male coworkers than with McQueary. See also *In re Coleman*, Ill. Hum. Rts. Comm'n Rep. 1990SF0061 (May 5, 1997) (where complainant's violation of a work rule is direct result of employer's discriminatory behavior, employer can not rely upon work rule violation as a legitimate basis for discharge). Third, Baird stated that McQueary was discharged, in part, because employee absence disrupts production. Yet, this business rationale was not consistent with management's response to the conduct of male coworkers who were preventing McQueary from completing her work. Finally, the evidence also demonstrates that Wal-Mart failed to follow its own personnel policies. The employment handbook lists a number of rule violations that merit immediate discharge. Leaving work before the end of a shift is not specifically listed as a violation subject to immediate discharge. Rather, the incident is one that appears to be subject to progressive discipline. McQueary's file indicates that the next level of corrective action prior to termination should have been a second written warning. Baird conceded that McQueary was entitled to a second written warning instead of termination. Therefore, it is clear that the proffered explanations for discharging McQueary were not worthy of credence.

Wal-Mart argues that the HRC may not infer a discriminatory motive where the employer's decision does not appear to make any rational business sense or its actions are inconsistent with its stated business policies. We disagree.

In *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 57 L. Ed. 2d 957, 98 S. Ct. 2943 (1978), the Supreme Court held that the *prima facie* case raises an inference of discrimination because it is presumed that such actions, if otherwise unexplained, are more likely than not based on impermissible facts. The Court explained:

> "[W]e are willing to presume this largely because we know from our experience that more often than not people do not act in a totally arbitrary manner, without any underlying reasons, especially in a business setting. Thus, when all legitimate reasons for [an employment decision] have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts only with *some* reason, based his decision on an impermissible consideration \*\*\*." (Emphasis in original.) 438 U.S. at 577, 57 L. Ed. 2d at 967, 98 S. Ct. at 2950.

The fact finder's disbelief of the reasons put forward by the employer may, together with the elements of the *prima facie* case, suffice to show intentional discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511, 125 L. Ed. 2d 407, 418, 113 S. Ct. 2742, 2749 (1993). Therefore, the rejection of the employer's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination. Here, the evidence shows not only that Wal-Mart treated McQueary more severely than it treated her male coworkers for similar misconduct but also that McQueary's termination was inconsistent with management's rationale. The evidence supports the HRC's conclusion that the employer's action was the product of unlawful discrimination, and we will not reweigh the evidence or substitute our judgment for that of the fact finder. The HRC's finding of pretext was not against the manifest weight of the evidence.

■ Wal-Mart argues that McQueary failed to establish a claim of sexual harassment because Wal-Mart could not be liable unless it knew about it and did nothing. This argument misses the point and is based on a misconception of the law. There is a distinction between a complaint for sexual harassment and one for sexual discrimination. While McQueary alleges that her coworkers sexually harassed her, her claim is not based upon sexual harassment. Rather, it is based on the theory that her employer treated her less favorably than others because of her gender.

We have reviewed Wal-Mart's remaining contentions and find them to be without merit. Accordingly, the HRC's finding of intentional discrimination is not against the manifest weight of the evidence.

Based on the foregoing, the judgment of the HRC is affirmed.

Affirmed.

McLAREN and GEIGER, JJ., concur.