THE BOARD OF EDUCATION, CITY OF PEORIA SCHOOL DISTRICT No. 150, Petitioner, v. ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD *et al.*, Respondents.

Fourth District   No. 4—00—0030

Opinion filed December 29, 2000.

Julian E. Cannell, of Kavanagh, Scully, Sudow, White & Frederick, P.C., of Peoria, for petitioner.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Elizabeth Schenkier, Assistant Attorney General, of counsel), for respondent Illinois Educational Labor Relations Board.

David Reeise, of Metamora, respondent *pro se.*

JUSTICE McCULLOUGH delivered the opinion of the court:

Petitioner, Board of Education, City of Peoria School District No. 150 (District), seeks direct review (115 ILCS 5/16(a) (West 1998); 155 Ill. 2d R. 335) of a decision of the Illinois Educational Labor Relations

Board (IELRB) finding that the District had violated sections 14(a)(1), (a)(3), and (a)(4) of the Illinois Educational Labor Relations Act (Act) (115 ILCS 5/14(a)(1), (a)(3), (a)(4) (West 1998)) and reinstating respondent David Reeise to the position of custodian, or a substantially equivalent position, and making him whole for his lost wages and benefits, plus interest. *Peoria School District No. 150*, 15 Pub. Employee Rep. (Ill.) par. 1034, No. 98—CA—0023—S (IELRB April 6, 1999). On review, both the IELRB and Reeise, *pro se*, have filed responsive briefs. Hereinafter, Reeise will be referred to as respondent. The issues are whether (1) the plurality decision of the IELRB and the administrative law judge (ALJ) properly invoked the missing witness rule against the District and (2) the IELRB decision is against the manifest weight of the evidence. We affirm.

●1 Taken with the case are two motions by respondent Reeise to supplement the record on review. No objections have been filed. However, the motions demonstrate that the documents sought to be supplemented were not before the ALJ or IELRB when their respective decisions were made. On review of an administrative agency decision, this court is limited to considering the record that was before the agency and may not consider new or additional evidence. *North Avenue Properties, L.L.C. v. Zoning Board of Appeals*, 312 Ill. App. 3d 182, 185, 726 N.E.2d 65, 68 (2000), quoting section 3—110 of the Administrative Review Law (735 ILCS 5/3—110 (West 1998)). The Administrative Review Law applies to this direct review proceeding. 115 ILCS 5/16(a) (West 1998). Respondent's two motions to supplement the record with material that was not in the record of the administrative agency are denied.

On May 4, 2000, this court previously allowed petitioner's motion to supplement the record with very similar material relating to the IELRB's finding that respondent was a member of a union bargaining team in 1996 and 1997. The petitioner sought to "correct *errata*" by submitting minutes of the collective-bargaining committee dated December 9, 1994, and September 3, 1997. The IELRB's objection was not received by this court before the petitioner's motion was granted, and on May 24, 2000, the IELRB's motion for reconsideration was denied. It is clear, however, that the documents submitted by petitioner to supplement the record were not before the IELRB and were never part of the record.

We now reconsider and grant the IELRB's motion to reconsider the earlier ruling on petitioner's motion to supplement the record and deny petitioner's motion to supplement the record. See *People v. Nichols*, 143 Ill. App. 3d 673, 676, 493 N.E.2d 677, 679 (1986).

The District first argues that the plurality decision of the IELRB

and the ALJ improperly applied the missing witness rule. The IELRB accepted the ALJ's resolution of the credibility of witnesses. The District particularly attacks this resolution in respect to whether respondent intimidated a "Mrs. Ernest" by lunging at her during a conversation. The allegation was made in a letter from Aurthur Perkins, principal of Harrison Primary School, to Jerome A. Greer, the District's director of human resources. Although she did not testify, Ernest is identified in the IELRB decision as a teacher's aide.

The IELRB determined that respondent did not act to intimidate Ernest as Perkins alleged in her letter. In a footnote, the plurality decision of the IELRB explains its reliance on the ALJ's determination of Perkins' credibility and the ALJ's conclusion that, had Ernest been called to testify, she would have testified unfavorably to the District. This conclusion was based on the fact that the District did not call Ernest to testify.

■ The missing witness rule allows the trier of fact to draw an adverse inference if (1) the missing witness was under the control of the party against whom the inference is drawn, (2) the witness could have been produced in the exercise of reasonable diligence, (3) the witness was not equally available to the party in whose favor the inference is drawn, (4) a reasonably prudent person would have produced the witness if the party believed the testimony would be favorable, and (5) no reasonable excuse for the failure to produce the witness is shown. See *Simmons v. University of Chicago Hospitals & Clinics*, 162 Ill. 2d 1, 7, 642 N.E.2d 107, 110 (1994); Illinois Pattern Jury Instructions, Civil, No. 5.01 (3d ed. 1995) (hereinafter IPI Civil 3d).

The ALJ's recommended decision and order includes the following paragraph in her findings of fact:

> "Where the evidence is in conflict, my findings are based on the testimony that was credible. I have tried to make clear the points at which a material credibility dispute exists. In general, I found the testimony of Principal Perkins to be less credible than that of Reeise where the evidence is in conflict. Perkins was generally evasive, denying recollection of key incidents, and she gave inconsistent testimony about some incidents. Based on my observation of her testimony, I believe she was primarily concerned with justifying her initiation of Reeise's discharge. In addition, the District did not call other witnesses employed at Harrison School who might have lent credibility to Perkins' version of events, even though such witnesses are obviously within the District's control."

The ALJ also reasoned: "The District did not call Ernest as a witness to lend support to Perkins' version of the incident or to submit to cross-examination about it. I conclude that her testimony would have been unfavorable to the District."

■ The determination as to whom to call as a witness is left to each party. The missing witness inference was not the only basis for the ALJ's findings. The ALJ did not find Perkins credible. Perkins was petitioner's only witness as to this incident. The ALJ found respondent and custodian Eddie Washington more credible than Perkins about the circumstances of this incident. Her decision stated that although Perkins was "generally evasive, denying recollection of key incidents, and she gave inconsistent testimony about some incidents," "the District did not call other witnesses employed at Harrison School who might have lent credibility to Perkins' version of events, even though such witnesses are obviously within the District's control." Applying the factors set forth in IPI Civil 3d No. 5.01 and *Simmons*, the statements made by the ALJ with respect to the failure to call witnesses did not amount to reversible error.

■ The remaining issue is whether the IELRB decision is against the manifest weight of the evidence. The IELRB found that the District violated sections 14(a)(1), (a)(3), and (a)(4) of the Act. Section 14(a)(3) prohibits discrimination in hiring, tenure, or any term or condition of employment to encourage or discourage membership in any employee organization. 115 ILCS 5/14(a)(3) (West 1998). Section 14(a)(4) prohibits discharging or otherwise discriminating against an employee for signing or filing an affidavit, authorization card, petition, or complaint, or giving any information or testimony under the Act. 115 ILCS 5/14(a)(4) (West 1998). Section 14(a)(1) prohibits interfering, restraining, or coercing employees in the exercise of rights guaranteed under the Act. 115 ILCS 5/14(a)(1) (West 1998).

■ Our review extends to all questions of law and fact. The IELRB's findings of fact are considered *prima facie* true and correct. 735 ILCS 5/3—110 (West 1998). The decision of the IELRB will not be set aside unless the IELRB exercised its authority in an arbitrary or capricious manner or the decision is against the manifest weight of the evidence. *Hardin County Education Ass'n v. Illinois Educational Labor Relations Board*, 174 Ill. App. 3d 168, 178, 528 N.E.2d 737, 743 (1988). It is not the function of this court to reweigh evidence or make an independent determination of the facts. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88, 606 N.E.2d 1111, 1117 (1992). If the question involved is a question of law, this court is not bound by the IELRB's decision (*City of Freeport v. Illinois State Labor Relations Board*, 135 Ill. 2d 499, 507, 554 N.E.2d 155, 159-60 (1990)), but deference will be given to the interpretation of a statute by an agency charged with its administration and enforcement (*Central City Education Ass'n v. Illinois Educational Labor Relations Board*, 149 Ill. 2d 496, 510, 599 N.E.2d 892, 898 (1992)).

■ Although charged under different subsections of section 14 of the Act, all of the unfair labor practices in this case are based on the District's action of discharging respondent from his employment. As relevant to this case, to establish a *prima facie* case of a section 14(a)(4) violation, the respondent must prove that he used or participated in the IELRB's processes, the District was aware of those actions, and the District discharged him in part because of that activity. A *prima facie* case of a section 14(a)(3) violation is made by presenting evidence showing that the employee was engaged in activity protected by section 14(a)(3), the District was aware of that activity, and he was discharged for engaging in that activity. In determining whether the District's conduct violated section 14(a)(1) of the Act, the test is whether the District's conduct "may reasonably be said to have a tendency to interfere with the free exercise of employee rights under the Act." *Georgetown-Ridge Farm Community Unit School District No. 4 v. Illinois Educational Labor Relations Board*, 239 Ill. App. 3d 428, 465-66, 606 N.E.2d 667, 690 (1992). The IELRB has applied section 14(a)(1) to prohibit interference with concerted acts of mutual aid or protection, including activity not involving a union. *Crete-Monee School District No. 201-U*, 7 Pub. Employee Rep. (Ill.) par. 1068, No. 89—CA—0009—C, at IX—274 (IELRB May 24, 1991).

■ Once a *prima facie* showing has been made of the discharge being an unfair labor practice, the burden shifts to the District to demonstrate, by a preponderance of the evidence, that the discharge would have occurred notwithstanding the protected activity. *Georgetown-Ridge Farm*, 239 Ill. App. 3d at 464, 606 N.E.2d at 689. The determination of the District's motive is a question of fact which the IELRB may infer from direct or circumstantial evidence, and the IELRB's finding as to motivation must be accepted if supported by substantial evidence. *City of Burbank v. Illinois State Labor Relations Board*, 128 Ill. 2d 335, 345, 538 N.E.2d 1146, 1150 (1989).

■ Respondent testified that he had complained to union representatives about overtime issues, teachers working summertime, replacement workers, and custodians doing carpenter work. Respondent was a member of Local 8 of the International Union of Firemen and Oilers, SEIU, AFL-CIO, and Local 183 of the International Brotherhood of Carpenters. He had also pursued previous unfair labor practice charges against the District, the latest of which was resolved by this court in November 1997, months before he was discharged. *Reeise v. Illinois Educational Labor Relations Board*, 292 Ill. App. 3d 1135, 717 N.E.2d 866 (1997) (unpublished order under Supreme Court Rule 23).

By the nature of respondent's activities, it would be difficult to find that the District was not aware of his protected activities. Perkins

testified that respondent had presented her with grievances for her signatures and that overtime was never an issue until respondent was assigned to her building and raised the issue. Rich Traenkenschuh and Joe L. Jackson testified that the head custodian, Phil Shadid, told them that the respondent was a troublemaker and to document respondent's activities.

The IELRB could also infer from the evidence that respondent was discharged in part for his protected activities. See *Georgetown-Ridge Farm*, 239 Ill. App. 3d at 464-65, 606 N.E.2d at 689 (discussing a threat to fire all part-time custodians because of a lawsuit filed by one of them). As already noted, the IELRB found that Perkins told respondent in front of other witnesses whose affidavits were presented to the IELRB that respondent should not have filed charges against the District and she wanted him fired. The IELRB could infer from the evidence that the "charges" referred to by Perkins included the unfair labor practices charge and that she was not exclusively referring to claims he had filed with the Department of Human Rights.

Finally, the IELRB found that the District did not present sufficient evidence from which it could find that respondent would have been discharged for his poor work performance notwithstanding his protected activities. The IELRB found that there was disproportionate treatment by Perkins and the District in disciplining respondent and two other custodians prior to his being fired. Subsequent to a February 10, 1995, settlement agreement between respondent and the District that "purged" respondent's personnel file of all letters relating to prior disciplinary actions, respondent received a warning on March 21, 1995; a 15-day suspension on April 24, 1995; and a 30-day suspension on November 6, 1995. No other disciplinary actions were taken against respondent prior to his discharge on March 9, 1998. The IELRB adopted the ALJ's finding of lack of credibility of Perkins concerning the performance of respondent's job duties, basically finding that Perkins was trying to manufacture reasons to fire respondent. Questions of credibility are in general to be determined by the ALJ and IELRB. The supreme court's statements in *Parro v. Industrial Comm'n*, 167 Ill. 2d 385, 396, 657 N.E.2d 882, 886-87 (1995), are appropriate here:

> "The evidence in the case at bar could conceivably support a variety of inferences, and we will not substitute our judgment for that of the Commission merely because we might have drawn different inferences from the same record. [Citations.] '[I]t is axiomatic that this court will not disregard or reject permissible inferences drawn by the Commission merely because other inferences might be drawn, nor will we substitute our judgment for that

of the Commission unless its findings are against the manifest weight of the evidence. [Citations.]' (*Castaneda v. Industrial Comm'n* (1983), 97 Ill. 2d 338, 341.) It is the Commission's role to judge the credibility of the witnesses, determine the weight of their testimony, and draw appropriate inferences from the evidence."

This court is not the fact finder. By this order, however, we do not mean to indicate condonation or approval of the conduct of respondent.

The decision of the IELRB is not against the manifest weight of the evidence. The decision of the IELRB is affirmed.

Affirmed.

STEIGMANN, P.J., and COOK, J., concur.