SPEED DISTRICT 802, a/k/a Governing Board of Special Education Joint Agreement District 802, Petitioner-Appellant, v. RACHEL WARNING *et al.*, Respondents-Appellees.

First District (1st Division)   No. 1—08—0344

Opinion filed June 8, 2009.

630

GARCIA, J., dissenting.

Raymond A. Hauser and William F. Gleason, both of Hauser, Izzo, DeTella & Petrarca, LLC, of Flossmoor, for appellant.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Ann C. Chalstrom, Assistant Attorney General, of counsel), for appellees Illinois Educational Labor Relations Board and Lynne O. Sered.

Paul R. Klenck, of Illinois Education Association-NEA, of Chicago, for appellees Rachel Warning and Speed Education Association, IEA-NEA.

JUSTICE HALL delivered the opinion of the court:

Petitioner Speed District 802 (District) appeals from an opinion and order of the Illinois Educational Labor Relations Board (Board), which found that it committed an unfair labor practice in violation of section 14(a)(3) and, derivatively, section 14(a)(1) of the Illinois Educational Labor Relations Act (Act) (115 ILCS 5/14(a)(1), (a)(3) (West 2006)), when it nonrenewed Ms. Rachel Warning's teaching contract. The Board determined that the District nonrenewed Warning's teaching contract in retaliation for her engaging in a protected union activity—insisting that she be accompanied by a union representative during her postobservation remedial meetings with the school's principal.

The District contends on appeal that the Board erred in finding that it violated the Act when it nonrenewed Warning's teaching contract because: (1) Warning's request to be accompanied by a union representative during her postobservation remedial meetings with the school's principal did not constitute a protected activity; (2) even if the request constituted a protected activity, Warning still failed to present sufficient evidence that the District's decision to nonrenew her contract resulted from antiunion animus; and (3) even if Warning established a *prima facie* case of discriminatory discharge, the District still presented sufficient evidence establishing that Warning was

discharged for performance reasons. The District also contends that the Board did not have the authority to direct it to reinstate Warning to her teaching position where the reinstatement resulted in her obtaining tenure. We affirm.

The following facts are relevant on appeal. On March 1, 2005, Mr. Benoit Runyan, who was employed as a principal with the District, placed Warning on a "corrective action plan" designed to help her improve her classroom performance as well as her communication skills as they related to support staff. The plan called for periodic remedial meetings between Runyan and Warning where they would discuss and analyze certain material and evaluate her progress. The plan stated that unless Warning corrected certain identified deficiencies by May 1, 2005, there would be a recommendation to terminate her teaching contract.

The background of this appeal developed when a controversy arose between Runyan and Warning concerning Warning's insistence that she be accompanied by a union representative from the Speed Education Association, IEA-NEA (Union), during her remedial meetings with Runyan. Runyan objected to the presence of a union representative at these meetings.

At a meeting held on March 4, 2005, Warning, accompanied by union representative Beth Wierzbicki, stated that since her employment was at risk of termination she would insist that Wierzbicki accompany her to all future remedial meetings. Runyan responded that he and Warning could conduct the meetings on their own without Wierzbicki's presence or assistance.

Shortly after the March 4 meeting, Runyan and Warning encountered each other in the school's hallway whereupon Runyan asked if they could briefly meet. During this impromptu meeting, Runyan informed Warning that he would not allow Wierzbicki to attend future remedial meetings. Warning responded that she would not meet without union representation, and then read Runyan her "rights" from a little card she carried with her. According to Warning, Runyan became agitated and raised his voice, prompting her to leave his office.

On March 9, 2005, Runyan met with Wierzbicki. He informed her that he had spoken with Dr. Betty Pointer, the executive director of Speed, and that the both of them agreed that it was inappropriate for Warning to be accompanied by a union representative during her remedial meetings. Wierzbicki disagreed. She told Runyan that it was the Union's position that Warning was entitled to union representation at these meetings.

As a follow-up to their conversation, Wierzbicki sent Runyan a memorandum dated March 17, 2005, outlining the Union's position.

The memorandum stated in part that pursuant to the collective bargaining agreement and Warning's rights under *Weingarten*[1], Warning was entitled to have a union representative of her choice accompany her to the remedial meetings to document the discussions and to act as a witness and advisor.

On March 18, 2005, Wierzbicki accompanied Warning to a meeting attended by Runyan and Dr. Pointer. According to Wierzbicki and Warning, Dr. Pointer acted aggressively toward them at the meeting.

Warning stated that Dr. Pointer told her that she was not a "baby" and that she was old enough to handle the situation by herself without anyone holding her hand. Dr. Pointer initially told Wierzbicki that she would not be allowed to attend future remedial meetings because the meetings pertained to performance rather than disciplinary matters. However, later in the meeting, Dr. Pointer modified her position and agreed that Wierzbicki could attend future meetings provided she did not participate verbally. While making these statements, Dr. Pointer allegedly raised her voice and pointed her finger in Wierzbicki's face, warning her that if she opened her mouth in future sessions she would be asked to leave or that she (Dr. Pointer) would come down and make her leave.

On March 22, 2005, Wierzbicki accompanied Warning to her next meeting with Runyan. Warning submitted lesson plans and other materials. After reviewing these documents and materials, Runyan stated that he liked what he saw but that the process was ongoing. He also gave Warning a reading assignment.

Thereafter, Warning was sent two notices dated March 24, 2005, regarding her teaching contract. The first notice was a nonrenewal letter from the District informing Warning that her contract would not be renewed for performance reasons. The second notice was from Dr. Pointer reminding Warning that she was currently on a corrective action plan and that her continued employment was contingent on successful completion of the plan.

Runyan then sent Warning and Wierzbicki a memorandum dated March 31, 2005, indicating that starting in April 2005, all future remedial meetings should only be attended by the administrator (Runyan) and teacher (Warning). Shortly thereafter, Dr. Pointer and Janet

---

[1]Pursuant to *National Labor Relations Board v. J. Weingarten, Inc.*, 420 U.S. 251, 43 L. Ed. 2d 171, 95 S. Ct. 959 (1975), a union member is entitled to have a union representative attend an investigatory meeting if the member reasonably believes the meeting might involve disciplinary action. See, *e.g.*, *Ehlers v. Jackson County Sheriff's Merit Comm'n*, 183 Ill. 2d 83, 90-91, 697 N.E.2d 717 (1998).

Zitzer, the union's director, engaged in a "heated" telephone conversation regarding Wierzbicki's attendance at the remedial meetings. Dr. Pointer was opposed to Wierzbicki attending the meetings while Zitzer strongly believed Wierzbicki should be allowed to attend the meetings.

As a follow-up to their telephone conversation, Dr. Pointer sent Zitzer a letter dated April 6, 2005. In the letter, Dr. Pointer stated that she had met with Runyan to discuss what precipitated his March 31 memorandum to Warning and Wierzbicki. Dr. Pointer stated that Runyan had sent the memorandum because despite warnings to the contrary, Wierzbicki had continued to insert herself into the remedial discussions through her body language (nodding her head) and by passing notes back and forth to Warning. Dr. Pointer characterized Wierzbicki's behavior as insubordinate, manipulative, and unacceptable.

Dr. Pointer expressed her belief that Warning was not entitled to union representation at the remedial meetings because the meetings specifically pertained to performance rather than disciplinary matters. However, Dr. Pointer stated that Wierzbicki would be allowed to continue to attend future remedial meetings provided she participated strictly as a listener and note-taker. Dr. Pointer stated that if Wierzbicki did not abide by her directives she would address the issue as a disciplinary matter.

In a memorandum dated April 22, 2005, Runyan provided Warning with feedback concerning her progress relating to the corrective action plan. Runyan rated Warning unsatisfactory in the areas of "instructional presentation" and "professional communication/responsibilities." He stated that Warning had shown some demonstrated improvement in the area of "instruction" and that she had taken steps to align her instruction to State standards in design and implementation.

Runyan further stated, however, that Warning had been late to several meetings and that she failed to consistently provide prepared evidence and seemed inadequately prepared for their meetings. He also stated that Warning's actions created barriers in their ability to effectively communicate. He claimed that the "corrective process" became cumbersome and chaotic due to the "choices" Warning had made. Runyan stated that by the time the process was over, there appeared to be little growth in the area of improved communication. Runyan concluded that Warning had failed to meet the terms of the corrective action plan and recommended that she be terminated.

Shortly thereafter, Dr. Pointer sent Warning a memorandum dated April 28, 2005, notifying her that her teaching contract would terminate at the end of the 2004-05 school year.

In August 2005, Warning and the Union filed an unfair labor practice charge with the Board against the District. On April 9, 2007, the administrative law judge (ALJ) issued a recommended decision and order holding that the District had violated section 14(a)(3) and, derivatively, section 14(a)(1) of the Act by failing to renew Warning's teaching contract because she insisted on having a union representative attend remedial meetings. The ALJ determined that the District must make Warning whole for discriminatorily removing her from her teaching position. The ALJ ordered the District to, among other things, offer Warning immediate and full reinstatement to her teaching position and to make her whole for the loss of any pay or benefits, with interest at a rate of 7% per annum.

On January 8, 2008, the Board issued an opinion and order affirming the ALJ's recommended decision and order as modified. The District appeals.

## ANALYSIS

The District first contends the Board erred in finding that it violated section 14(a)(3) and, derivatively, section 14(a)(1) of the Act when it nonrenewed Warning's teaching contract. We disagree.

The Board's findings are reviewed under the Administrative Review Law (735 ILCS 5/3—101 et seq. (West 1994)). Board of Trustees of the University of Illinois v. Illinois Labor Relations Board, 224 Ill. 2d 88, 97, 862 N.E.2d 944 (2007). The Administrative Review Law provides that review of an administrative agency's decision extends to all questions of law and fact presented by the record (735 ILCS 5/3—110 (West 1994)). Elementary School District 159 v. Schiller, 221 Ill. 2d 130, 142, 849 N.E.2d 349 (2006).

On review, an administrative agency's factual findings are considered to be prima facie true and correct and will not be disturbed unless they are against the manifest weight of the evidence. Van Campen v. International Business Machines Corp., 326 Ill. App. 3d 963, 970, 762 N.E.2d 545 (2001). A factual finding is against the manifest weight of the evidence when the opposite conclusion is clearly evident or the finding is arbitrary, unreasonable, or not based on the evidence. Samour, Inc. v. Board of Election Commissioners, 224 Ill. 2d 530, 544, 866 N.E.2d 137 (2007); City of Belvidere v. Illinois State Labor Relations Board, 181 Ill. 2d 191, 205, 692 N.E.2d 295 (1998).

An agency's findings on questions of law, however, are reviewed de novo. City of Belvidere, 181 Ill. 2d at 205.

In this case, the Board was presented with several questions that required application of certain facts to determine their legal effect. The Board was required to determine whether Warning's activity in

having a union representative accompany her to the remedial meetings was a motivating factor in the District's decision to nonrenew her teaching contract. An employer's motive is a question of fact. *Grchan v. Illinois State Labor Relations Board*, 315 Ill. App. 3d 459, 467, 734 N.E.2d 33 (2000).

The Board was also required to determine whether the District's articulated reason for nonrenewing Warning's teaching contract was pretextual. The issue of whether an employer's articulated reason for its employment decision is pretextual is also a question of fact. *Irick v. Human Rights Comm'n*, 311 Ill. App. 3d 929, 936, 726 N.E.2d 167 (2000).

The Board was ultimately required to determine whether, under the facts of the case, the District committed an unfair labor practice in violation of section 14(a)(3) and, derivatively, section 14(a)(1) of the Act when it nonrenewed Warning's teaching contract. Since the resolution of these issues involves mixed questions of law and fact, we apply a clearly erroneous standard. See *Board of Education v. Sered*, 366 Ill. App. 3d 330, 336, 850 N.E.2d 821 (2006) (the Board's determination that an unfair labor practice was committed presents a mixed question of law and fact subject to the clearly erroneous standard of review). An administrative agency's decision is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been committed. *American Federation of State, County & Municipal Employees, Council 31 v. Illinois State Labor Relations Board, State Panel*, 216 Ill. 2d 569, 577-78, 839 N.E.2d 479 (2005).

■ Section 14(a)(3) of the Act applies to discrimination based on union activity. *Bloom Township High School District 206 v. Illinois Educational Labor Relations Board*, 312 Ill. App. 3d 943, 957, 728 N.E.2d 612 (2000). This section prohibits educational employers and their agents from discriminating in "regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any employee organization." 115 ILCS 5/14(a)(3) (West 2006).

Section 14(a)(1) of the Act covers an employer's adverse action against an employee due to protected activity not necessarily involving a union. *Bloom Township*, 312 Ill. App. 3d at 957; *Board of Education, City of Peoria School District No. 150 v. Illinois Educational Labor Relations Board*, 318 Ill. App. 3d 144, 150, 741 N.E.2d 690 (2000). This section prohibits educational employers and their agents from "[i]nterfering, restraining or coercing employees in the exercise of the rights guaranteed under this Act." 115 ILCS 5/14(a)(1) (West 2006).

When alleged violations of sections 14(a)(1) and 14(a)(3) stem from the same conduct, as in this case, the section 14(a)(1) violation is

deemed a derivative violation. *Bloom Township*, 312 Ill. App. 3d at 957; *Abuzir*, 22 Pub. Employee Rep. (Ill.) par. 143, No. 2004—CA—0061—C (IELRB April 11, 2006) (hereinafter 22 Pub. Employee Rep. (Ill.) par. 143). Under such circumstances, the applicable test is the one used in section 14(a)(3) cases requiring proof of improper motivation on the employer's part. *Bloom Township*, 312 Ill. App. 3d at 957.

■ To establish a *prima facie* case of discriminatory discharge under section 14(a)(3), a complainant must prove that: (1) she was engaged in a protected activity; (2) the employer was aware of that activity; and (3) the employer took adverse action against complainant for engaging in that activity. *Board of Education of the City of Peoria, School District No. 150 v. Illinois Educational Labor Relations Board*, 220 Ill. App. 3d 984, 989, 581 N.E.2d 395 (1991); *Abuzir*, 22 Pub. Employee Rep. (Ill.) par. 143, at 553. The third element of the *prima facie* case is satisfied when the employee establishes that the protected activity was a substantial or motivating factor in the employer's adverse action against the employee. *General Service Employees Union, Local 73 v. Illinois Educational Labor Relations Board*, 285 Ill. App. 3d 507, 516, 673 N.E.2d 1084 (1996).

■ In this case, the District contends that the complainants failed to establish the first and third elements of the *prima facie* case. In regard to the first element, the District claims that Warning was not engaged in a protected activity when she requested to be accompanied by a union representative during her remedial meetings with the school's principal.

The District contends that since the collective bargaining agreement specifically allows for union representation at investigatory meetings which might possibly lead to disciplinary action, the Union consequently waived the right for union representation at remedial meetings regarding only performance matters. The District maintains that Warning's requests for union representation at the remedial meetings did not constitute a protected activity because the meetings pertained to performance rather than investigatory matters and therefore her requests fell outside the "contours" of the collective bargaining agreement. We disagree.

We agree with the holding in *Summit Hill School District 161*, 4 Pub. Employee Rep. (Ill.) par. 1009 n.7, No. 86—CA—0090—C at IX—33 (IELRB December 1, 1987) (hereinafter 4 Pub. Employee Rep. (Ill.) par. 1009), where the Board determined that since postobservation remedial meetings can sometimes result in a teacher's discharge, the suggestion that such meetings were not "investigatory" must be rejected. We agree with the Board that Warning was engaged in a

protected activity when she requested union representation during her remedial meetings with Runyan. See, *e.g.*, *Georgetown-Ridge Farm Community Unit School District No. 4 v. Illinois Educational Labor Relations Board*, 239 Ill. App. 3d 428, 464, 606 N.E.2d 667 (1992) (employee engaged in protected activity by seeking the assistance of union representative concerning reduction of hours and filing of complaint); *Abuzir*, 22 Pub. Employee Rep. (Ill.) par. 143, at 553 (employee engaged in protected activity when union representative accompanied him to pre-disciplinary meetings).

We also agree with the Board's determination that the complainants satisfied the third element of the *prima facie* case by showing that Warning's activity in having a union representative accompany her to the remedial meetings was a motivating factor in the District's decision to nonrenew her teaching contract. Motive is a question of fact, and as a result, the Board may infer discriminatory motive from direct or circumstantial evidence. *Board of Education*, 220 Ill. App. 3d at 990.

■ Antiunion motivation may be inferred from circumstantial evidence such as: an employer's expressed hostility toward unionization, together with knowledge of the employee's union activities; proximity in time between an employee's union activity and her discharge; inconsistencies between the proffered reason for discharge and other actions of the employer; and shifting explanations for the discharge. *City of Burbank v. Illinois State Labor Relations Board*, 128 Ill. 2d 335, 346, 538 N.E.2d 1146 (1989).

In the instant case, the Board inferred an antiunion motivation from Runyan's and Dr. Pointer's expressed hostility toward Warning's participation in the protected activity of having a union representative accompany her to the remedial meetings. The Board further determined that the District offered shifting explanations for nonrenewing Warning's teaching contract. Runyan's memorandum of April 22, 2005, indicated he was recommending nonrenewal based on his assessment that Warning had failed to show adequate growth in the area of improved communication, while the District stated it was nonrenewing the contract due in part to Warning's inadequate teaching abilities, even though Runyan concluded that Warning's teaching abilities had demonstrably improved.

The Board also determined that the District in essence admitted that it nonrenewed Warning's teaching contract as a result of her participation in a protected activity when Runyan stated in his memorandum of April 22, 2005, that he was recommending nonrenewal due in large part to the "choices" Warning had made. The

Board concluded that the so-called "choices" Runyan was referring to was Warning's protected activity of insisting on having a union representative accompany her to the remedial meetings. The Board reasoned that its conclusion was supported by the fact that, when questioned by Warning, Runyan refused to identify the wrong "choices" he believed Warning made.

The manifest weight of the evidence supports the Board's finding that the complainants established a *prima facie* case of discriminatory discharge under section 14(a)(3) of the Act. See *Bloom Township*, 312 Ill. App. 3d at 960.

Once a *prima facie* case is established, the burden shifts to the employer to show by a preponderance of the evidence that it had a legitimate nondiscriminatory reason for discharging the employee and that the employee would have been terminated for that reason even in the absence of the protected activity. *Bloom Township*, 312 Ill. App. 3d at 960. If the employer proffers a legitimate reason for its adverse action, the employee must then show that the employer's stated reason for the action was merely pretextual. *General Service Employees Union*, 285 Ill. App. 3d at 516.

■ In this case, the Board determined that the District's stated reasons for nonrenewing Warning's teaching contract—failure to remediate deficiencies in her communication skills and teaching abilities—were pretextual given Runyan's assessment that Warning's teaching abilities had demonstrably improved. The Board also concluded that Runyan's references to Warning's so-called "choices" and his inaccurate statements concerning her punctuality and lack of preparedness further demonstrated the pretextual nature of the District's reasons for nonrenewing Warning's teaching contract.

Whether an employer's articulated reason for its employment decision is pretextual is a question of fact for the Board to decide, and its decision will not be disturbed on appeal unless it is against the manifest weight of the evidence. See *Irick*, 311 Ill. App. 3d at 936. Here, the evidence supports the Board's determination that the District's stated reasons for nonrenewing Warning's teaching contract were pretextual and that her discharge was actually the product of unlawful discrimination. The Board's finding of pretext was not against the manifest weight of the evidence. We will not reweigh the evidence or substitute our judgment for that of the fact finder on this issue. See *Wal-Mart Stores, Inc. v. Human Rights Comm'n*, 307 Ill. App. 3d 264, 270, 717 N.E.2d 552 (1999).

In sum, we believe the Board's ultimate determination that the District violated section 14(a)(3) and, derivatively, section 14(a)(1) of the Act when it nonrenewed Warning's teaching contract was not clearly erroneous.

■ The District finally contends the Board did not have the authority to direct it to reinstate Warning to her teaching position where the reinstatement resulted in her obtaining tenure. Again, we must disagree.

Remedial orders of the Board are reviewed for abuse of discretion. *Paxton-Buckley-Loda Education Ass'n v. Illinois Educational Labor Relations Board*, 304 Ill. App. 3d 343, 353, 710 N.E.2d 538 (1999). The purpose of the Board in fashioning a remedy in an unfair labor practice case is to "make whole" victims of unfair labor practices by ordering that they be placed in the same position they would have occupied if the unfair labor practice had never occurred. *Paxton-Buckley-Loda*, 304 Ill. App. 3d at 353. "The Board has wide discretion and substantial flexibility in determining an appropriate remedy." *Sered*, 366 Ill. App. 3d at 340, citing *Paxton-Buckley-Loda*, 304 Ill. App. 3d at 353-54.

Here, the Board concluded that the District committed an unfair labor practice when it nonrenewed Warning's teaching contract at the end of her fourth year because of her union activity. The Board determined that the proper remedy for the illegal nonrenewal of Warning's teaching contract was reinstatement to her teaching position—even if the reinstatement resulted in her obtaining tenure—since the reinstatement placed her in the same position she would have been in had the illegal nonrenewal never occurred.

The Board's remedy is similar to the remedy crafted in *Hoyleton Consolidated School District No. 29*, 6 Pub. Employee Rep. (Ill.) par. 1097, No. 89—CA—0057—S (IELRB June 29, 1990) (hereinafter 6 Pub. Employee Rep. (Ill.) par. 1097), where the Board's executive director determined that the "reinstatement remedy" included tenure where the teacher would have been retained and consequently granted tenure if not for the union activity.

Section 14(a)(3) of the Act prohibits educational employers and their agents from discriminating in "regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any employee organization." 115 ILCS 5/14(a)(3) (West 2006). Section 15 of the Act provides that if the Board finds that a party has committed an unfair labor practice, it is "empowered to issue an order requiring the party charged to stop the unfair practice, and may take additional affirmative action." 115 ILCS 5/15 (West 2006).

We conclude that the powers granted to the Board under sections 14(a)(3) and 15 of the Act include the authority to direct the District to reinstate a teacher to her teaching position even if the reinstatement results in her obtaining tenure. This conclusion is based upon the reasoning that since the denial of tenure on account of union

activity is unlawful, the Board's remedial powers necessarily include the authority to reinstate a teacher who was unlawfully discharged in retaliation for participating in a protected activity, even if the reinstatement results in tenure. See, *e.g.*, *Southern Worcester County Regional Vocational School District v. Labor Relations Comm'n*, 386 Mass. 414, 423, 436 N.E.2d 380, 386 (1982).

Under the circumstances in this case, the Board did not abuse its discretion in ordering the make-whole remedy of directing the District to reinstate Warning to her teaching position even though the reinstatement resulted in her obtaining tenure.

Accordingly, for the reasons set forth above, we affirm the opinion and order of the Illinois Educational Labor Relations Board.

Affirmed.

R. GORDON, P.J., concurs.

JUSTICE GARCIA, dissenting:

I am persuaded by Speed District 802's arguments that the decision of the Illinois Educational Labor Relations Board (IELRB) contravenes the holdings in three cases: (1) *Ehlers v. Jackson County Sheriff's Merit Comm'n*, 183 Ill. 2d 83, 93, 697 N.E.2d 717 (1998), where the supreme court held that a collective bargaining agreement that provides union representation only in certain circumstances waives union representation in situations outside those circumstances; (2) *Board of Education of Schaumburg Community Consolidated School District No. 54 v. Illinois Educational Labor Relations Board*, 247 Ill. App. 3d 439, 457, 616 N.E.2d 1281 (1993), where Justice Cousins found the claimed activity serving as one of the bases of the unlawful labor practices under section 14(a)(1) of the Illinois Educational Labor Relations Act (Act) (Ill. Rev. Stat. 1989, ch. 48, par. 1714(a)(1) (now see 115 ILCS 5/14(a)(1) (West 2006))) was "personal in nature"; and (3) *Midwest Central Education Ass'n v. Illinois Educational Labor Relations Board*, 277 Ill. App. 3d 440, 446, 660 N.E.2d 151 (1995), where Justice Hoffman concluded that the School Code (105 ILCS 5/1—1 *et seq.* (West 1992)) grants to a school board *only* the discretion to grant tenure to a probationary teacher. Each case, for differing reasons, dictates that the IELRB erred in its decision before us.

In *Ehlers*, in reversing the appellate court, our supreme court found that the collective bargaining agreement *waived* any right of the union member, a sergeant with the Jackson County sheriff's department, to have union representation at a meeting with the sheriff

to discuss "rumors of misconduct [that] had come to the sheriff's attention, *** [where] the meeting's purpose was to discuss the facts to determine whether a formal investigation of Ehlers was necessary." *Ehlers*, 183 Ill. 2d at 96-97. The supreme court examined the collective bargaining agreement between the local union and the sheriff's department and found that the union had waived union representation at informal hearings in favor of union representation at formal proceedings where only formal proceedings " 'could lead to disciplinary action, or dismissal.' " *Ehlers*, 183 Ill. 2d at 94 (quoting Ehlers's collective bargaining agreement). The collective bargaining agreement mandated union representation only at the " 'the questioning of an officer pursuant to the formal investigation procedures' but not 'questioning *** as part of an informal inquiry.' " *Ehlers*, 183 Ill. 2d at 95, quoting 50 ILCS 725/2(d) (West 1992). Based on its finding of waiver, the supreme court left unresolved the sheriff's contention "that *Weingarten*-type rights should not be extended to public employees such as Ehlers." *Ehlers*, 183 Ill. 2d at 92. "Even assuming, *arguendo*, that Ehlers had *Weingarten*-type rights, her own collective bargaining agreement expressly waived those rights here." *Ehlers*, 183 Ill. 2d at 93. The supreme court affirmed the firing of Sergeant Ehlers, who was also a member of the collective bargaining unit represented by the Illinois Fraternal Order of Police Labor Council. *Ehlers*, 183 Ill. 2d at 84.

Here, the IELRB impliedly concedes that no provision in the collective bargaining agreement mandates union representation at the postevaluation meetings aimed at addressing the remediation that Speed District 802 concluded Ms. Warning needed: "It is unnecessary for us to decide whether denying Warning union representation at the postevaluation meetings would have been an unfair labor practice under *Summit Hill School District 161*, 4 PERI 1009, Case No. 86—CA—0090—C (IELRB, December 1, 1987) and *NLRB v. Weingarten*, 420 U.S. 251 [43 L. Ed. 2d 171, 95 S. Ct. 959] (1975)." The IELRB seeks to skirt *Ehlers*'s reference to the *Weingarten*-type rights: "In this case it is not alleged that the District violated the Act by denying Warning union representation, but rather that it retaliated against her for having union representation." This nice distinction makes no difference in the case before us. Either Ms. Warning had the right to have union representation at the postevaluation meetings or she did not. If she did not, Speed District 802 was well within its "supervisory authority" to restrict union representation at the postevaluation meetings to a nonactive role. See *Schaumburg Community*, 247 Ill. App. 3d at 455 (IELRB's interpretation of section 3 of the Illinois Educational Labor Relations Act (now 115 ILCS 5/3 (West 2006)) rejected because it would make "the exercise of supervisory authority impossible").

I read *Ehlers* to bar the IELRB from transforming Ms. Warning's desire to have union representation at the postevaluation meetings into union activity when no such right exists in the collective bargaining agreement between Speed District 802 and Speed Education Association, Ms. Warning's union. Similar to the one at issue in *Ehlers*, the collective bargaining agreement here provides: "A bargaining unit member shall be entitled to have present a representative of the Association during any meeting which leads to disciplinary action. *** [However,] [d]isciplinary action is not performance based." The postevaluation meetings, central to the IELRB's finding, were indisputably about Ms. Warning's *performance* under the collective bargaining agreement. "Remediation of staff for performance based reasons shall not be subject to grievance and/or arbitration." That Ms. Warning's performance, as a probationary teacher in her last year of probation, could have resulted in the nonrenewal of her contract does not transform the performance-based meeting into one that "leads to disciplinary action." The IELRB's claim in its brief that *Ehlers* is distinguishable because *Ehlers* addressed a discharge for " 'cause' " and the instant case is about "retaliation" is simply unpersuasive as it fails to address *Ehlers*'s true holding.

Nor is the IELRB's claim that Ms. Warning engaged in "union activity" by having a union representative present with her at the postevaluation meetings any more persuasive. Ms. Warning stands alone in her claim that she was retaliated against by Speed District 802 based on her insistence of having a union representative present at the postevaluation meetings. In its order, the IELRB acknowledges that another member of Speed Education Association successfully completed the remediation process with a union representative present before Speed District 802. The IELRB seeks to limit the significance of this by observing that this probationary teacher was "represented by a union representative other than Wierzbicki" and "the District *apparently* did not dismiss" this other probationary teacher. (Emphasis added.) The IELRB concludes that "it was in particular to Wierzbicki's [the union representative] assertiveness in representing Warning that the District objected." I agree. There is no question but that Ms. Wierzbicki's assertiveness transformed the postevaluation meetings into adversarial proceedings, with Ms. Wierzbicki acting as Ms. Warning's advocate, causing the initial aim of the postevaluation meetings of developing a plan to improve Ms. Warning's teaching skills to be lost.

The IELRB's order makes note of Ms. Wierzbicki's assertiveness in arriving at its conclusion that the nonrenewal of Ms. Warning was a "pretext" for antiunion animus. This finding that Ms. Wierzbicki took

on a major role in the postevaluation meetings, I submit, makes this case indistinguishable from *Schaumburg Community*. There the record, like the record here, "is void of any conclusion that [the union member school teacher's] activity was anything but personal in nature." *Schaumburg Community*, 247 Ill. App. 3d at 457. The rule of law is "that the National Labor Relations Act protects individual employees who invoke contractual rights because their activity is a direct extension of the collective bargaining process." *Schaumburg Community*, 247 Ill. App. 3d at 458, citing *National Labor Relations Board v. City Disposal Systems, Inc.*, 465 U.S. 822, 79 L. Ed. 2d 839, 104 S. Ct. 1505 (1984). However, "[t]he right to challenge the content of evaluations was excluded from the collective bargaining agreement." *Schaumburg Community*, 247 Ill. App. 3d at 458. In *Schaumburg Community*, consistent with the holding in *Ehlers*, we concluded that this explicit right to challenge was excluded not because it was enumerated under a provision dealing with "excluded rights" but because it was not expressly contained within the collective bargaining agreement as a right that each member had under the agreement. "Individual employees do not have the right to insist on terms and conditions in addition to or different from what has been negotiated by their exclusive representative. The Act does not protect employees who demand 'rights' [that] are excluded from the collective bargaining agreement [by their very absence]." *Schaumburg Community*, 247 Ill. App. 3d at 458.

I find the conduct engaged in at the postevaluation meetings by Ms. Wierzbicki, as Ms. Warning's advocate, to be no different from the conduct we found to be "rude and unprofessional" in *Schaumburg Community*. *Schaumburg Community*, 247 Ill. App. 3d at 458. Faced with such conduct, Speed District 802 was justified in not renewing Ms. Warning's contract.

Finally, even if the IELRB's conclusion that "the District violated Section 14(a)(3) and, derivatively, Section 14(a)(1) of the Act by nonrenewing Warning" were well grounded in the record, Illinois law grants exclusively to a school board the discretion to grant tenure to a probationary teacher. *Midwest Central*, 277 Ill. App. 3d at 446. In *Midwest Central*, the IELRB recognized and accepted that "the power to renew a nontenured teacher was reserved exclusively to the [School] District's discretion" where the remedy was ordered by an administrative law judge in upholding an arbitrator's ruling. *Midwest Central*, 277 Ill. App. 3d at 443-44. The IELRB now contends it, too, has the authority to grant tenure. The IELRB arrogates such authority based, in part, on an opinion issued by "the California Court of Appeal." Whatever the law may be in California, Illinois law has been declared

by this court in *Midwest Central* that under the School Code, only a local school board has that authority. I am unpersuaded by the arguments the IELRB makes for its newly staked position that it stands in equal footing with a local school board to grant tenure. What the IELRB fails to address in the remedy it awards to Ms. Warning is Speed District 802's conclusion that Ms. Warning was in need of remediation to remain a teacher within the district. Whatever remedy Ms. Warning may be entitled to for the claimed unfair labor practice, it is not lifetime tenure.

I dissent.